Robert B. SYMPSON, as Assignee of Alfred H. Osborne, Plaintiff-Appellant,

v.

Clay C. ROGERS, Lyman Field and Reed O. Gentry, Partners, doing business under the style and firm name of Rogers, Field and Gentry, Defendants-Respondents.

No. 46150.

Supreme Court of Missouri,

Division No. 1.

June 9, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied July 14, 1958.

Curtis J. Quimby, Jefferson City, for appellant.

Charles L. Carr, Kansas City, for respondents.

HOLMAN, Commissioner.

Plaintiff, Robert B. Sympson, as assignee of Alfred H. Osborne, instituted this suit to recover the sum of $19,590.31 which was alleged to have become due to plaintiff under the terms of a contract entered into between Osborne and defendants. Upon motion of defendants the trial court dismissed the cause with prejudice. Plaintiff has appealed from that judgment.

It is alleged that at all times mentioned in the petition defendants were duly licensed attorneys and were partners practicing in Kansas City, Missouri, under the firm name of Rogers, Field and Gentry. It is further alleged that Osborne, prior to December 10, 1951, was a duly licensed attorney and had been employed by five individuals to bring separate damage actions against the Kansas City Public Service Company under 50% contingent fee contracts, and had investigated the claims of said individuals, prepared for trial and filed suits for them in the circuit court of Jackson County, Missouri.

It further appears from the petition that "* * * prior to December 10, 1951, pursuant to an agreement with defendants, and each of them, that after payment of the attorneys' trial expenses, the net fee should be divided equally between the defendants' firm and Osborne, said Osborne forwarded the above-mentioned lawsuits to defendants herein to handle for said Osborne;

"6. That thereafter and prior to December 10, 1951, it was agreed that said Osborne would release the above-named clients from their several contracts with him, that Osborne would release and re-

linquish his attorney's liens upon his clients' several causes of action, that Osborne would, recommend the employment of defendants as attorneys to represent his above-named clients, that Osborne would provide defendants herein with his complete files in such of the above causes as they were employed in, and that said Osborne would render such further assistance in the preparation and trial of said causes as defendants herein would request; and that in consideration therefor, defendants and each of them, promised and agreed to pay said Osborne as his full compensation therefor a sum equal to one half of the amount defendants would be entitled to receive under such contracts as they were able to procure with the above-named clients in each of the above-named causes, provided that Osborne should stand such expense as had previously accrued, and that defendants should bear such expense as they incurred after they became employed by the above-named Osborne clients;

"7. That, thereafter and prior to December 10, 1951, in reliance upon defendants' said promises, said Osborne duly performed all the conditions of the above contract upon his part; that pursuant to said agreement, Osborne recommended to his several clients that they employ defendants to represent them in their respective lawsuits, and advised them that if they would employ defendants as their attorneys, he, the said Osborne, could and would cooperate with defendants in the preparation and trial thereof, and that he, Osborne, would make available to defendants herein all the work and preparation that Osborne had previously done in said lawsuits; that, as a result of Osborne's influence and recommendation, said Osborne took each of the above-named clients to the office of defendants, where said clients made and entered into separate, new, 50%, contingent fee agreements, whereby they employed defendants as their respective attorneys to represent them in the above-mentioned lawsuits; plaintiff further alleges that at said time and place, defendants, and each

of them, specifically agreed and promised said clients that defendants herein would pay said Osborne for his services out of the fee received by defendants herein."

The petition also alleged that prior to December 10, 1951, Osborne had assigned to plaintiff all of his rights and claims under the foregoing agreement. The petition further states that between February 11, 1952, and July 23, 1953, each of the cases herein involved were disposed of either by settlement or trial and as a result thereof defendants received fees aggregating $39,180.62, and that by reason of the foregoing agreement defendants became indebted to plaintiff in the sum of $19,590.31 which they failed and refused to pay.

Within the time provided therefor the defendants filed a motion to dismiss which reads as follows: "Come now the defendants and move the court to dismiss plaintiff's petition for the following reasons: 1. The petition fails to state a claim upon which relief can be granted and fails to state a cause of action against these defendants. 2. The attention of the court is directed to the fact of which the court will take judicial notice, that neither the plaintiff nor his alleged assignor are attorneys at law and therefore neither the plaintiff nor his alleged assignor could legally have or obtain any interest in any fee paid to the defendants as attorneys' fees for services rendered to any client and for that reason the petition fails to state a claim upon which relief can be granted and fails to state a cause of action against the defendants. 3. Since neither the plaintiff nor his alleged assignor were attorneys at law at the time any of the fees referred to in the petition were paid to the defendants, said defendants under the law were prohibited from paying any part of said fees to plaintiff or his alleged assignor. Wherefore, defendants pray the court to dismiss plaintiff's petition."

The motion to dismiss was heard and taken under advisement on December 18, 1956. At the beginning of that hearing

the following occurred: "Mr. Carr: If Your Honor please, * * * I have a letter from Marion Spicer, Clerk of the Supreme Court of Missouri, which advises that both Alfred H. Osborne and Mr. Sympson surrendered their licenses and surrender was accepted on December 10, 1951. Can that be agreed? Mr. Sympson: That can be agreed. The Court: And considered in conjunction with the motion? Mr. Sympson: Yes."

On February 6, 1957, the following was entered of record in this cause: "Defendants' Motion To Dismiss having come on regularly for hearing, and the court being fully advised in the premises, the Court takes judicial notice that Robert B. Sympson and Alfred H. Osborne voluntarily surrendered their licenses to practice law on Decemeber 10, 1951; and the court does now sustain said motion to dismiss, and does hereby dismiss said petition and cause with prejudice." Since it was contended in the trial court (and also here) that said order and judgment was void, we will briefly state the circumstances relating to its entry as shown by the transcript.

The motion in question was heard by Honorable Elmo B. Hunter who was then serving as judge of the Assignment Division of the Jackson County Circuit Court. On February 4, 1957, he was appointed as a judge of the Kansas City Court of Appeals and arranged to resign as circuit judge and assume the duties of his new office on February 8, 1957. In order to devote his full time to the study and disposition of matters pending under advisement, Judge Hunter requested that Judge John F. Cook hold court in the assignment division on February 6 and 7, and Judge Cook did so. On the evening of February 5, Judge Hunter wrote the instant order in longhand and signed the same. On the next morning he handed it to the assignment clerk for entry in the court records. However, the clerk failed to designate on the record that the judgment was entered by Judge Hunter and hence the record erroneously indicated that it was entered by Judge Cook.

On February 14, 1957, plaintiff filed a "motion to vacate or, in the alternative, a motion for a new trial" which assigned as grounds therefor that (1) the judgment appeared to have been entered by Judge Cook who had not heard the motion; (2) the judgment was based on matters not appearing on the face of the petition; and (3) plaintiff had not been given an opportunity to amend his petition. That motion was heard by Judge Cook, the regular judge of the assignment division, on February 18, 1957, and was overruled. On that date the court also denied an oral request of plaintiff to file an amended petition.

On February 20, 1957, no doubt as a result of the arguments presented on February 18, Judge Cook entered herein an "Order Correcting Record" whereby it was ordered by the court of its own initiative that the record of February 6, 1957, be corrected, nunc pro tunc, so that it would recite that the instant judgment of dismissal was entered by Judge Hunter. A motion to vacate that order was thereafter filed on March 2, 1957. After plaintiff's motion for a change of judge was sustained the said motion to vacate was heard by Honorable Harry A. Hall, another Jackson County circuit judge, and on May 31, 1957, it was overruled.

There is no merit in the contention of plaintiff that the judgment entered on February 6, 1957, was void because it appeared upon the record as having been entered by Judge Cook. It was, in fact, entered by Judge Hunter on a day when he was the regular judge of the assignment division of the circuit court. The judgment entered upon the record was a copy of a memorandum written in Judge Hunter's handwriting and signed by him. The fact that Judge Cook held court in the assignment division on that day, at the request of Judge Hunter, would not divest Judge Hunter of his authority to enter the instant judgment. Supreme Court Rule 11.04, 42

V.A.M.S. The only irregularity occurring in the instant proceeding was that the clerk made the mistake of entering Judge Hunter's judgment as the judgment of Judge Cook. It was proper for Judge Cook to correct that error by entering the "Order Correcting Record" on February 20, 1957. In this connection it should be noted that the order was entered within the 30-day period after entry of the judgment within which the court is authorized, for good cause, to correct its judgments. Supreme Court Rule 3.25, 42 V.A.M.S.; Crecelius v. Home Heights Co., Mo.Sup., 217 S.W. 508. The court had ample evidence, including the written judgment memorandum signed by Judge Hunter, to support the entry of the order correcting the clerical error in regard to the entry of the judgment.

■ The next question for our determination is whether the trial court erred in sustaining the motion to dismiss. If we decide that the petition did not state a claim upon which relief could be granted, then we must determine the further question as to whether the trial court abused the discretion vested in it in refusing to permit plaintiff to file an amended petition. In considering those questions we note that plaintiff concedes that he "stands in the shoes of his assignor." Also, as heretofore recited, it was agreed at the time the motion was heard in the trial court that both plaintiff and Osborne surrendered their licenses to practice law and those surrenders were accepted by this court on December 10, 1951; and it was further agreed that that fact could be considered by the court in conjunction with the motion to dismiss. In view of that admission we will consider that fact in determining the sufficiency of the petition as though it were actually alleged therein. Nastasio v. Cinnamon, Mo.Sup., 295 S.W.2d 117.

■ In connection with the foregoing admission we will take judicial notice of our own records which indicate that Osborne and Sympson surrendered their licenses in a disbarment proceeding wherein grave charges of professional misconduct had been made against them. Some indication of the nature of those charges may be obtained by an examination of the case of Osborne v. Purdome, Mo.Sup., 244 S.W.2d 1005, 29 A.L.R.2d 1141. It may also be noted that in the orders accepting the surrender of those licenses this court went further and ordered that said attorneys were disbarred.

■■ We have the view that the instant petition did not state a claim upon which relief could be granted and hence the court properly sustained the motion to dismiss. One reason for that conclusion is that it may be fairly inferred from the allegations of the petition that Osborne agreed, as a part of the consideration for defendants' alleged promise, to render legal services in providing "further assistance in the preparation and trial of said causes" and "would cooperate with defendants in the preparation and trial thereof." Since plaintiff and his assignor were both disbarred before any of the cases were terminated they were thereby precluded, by their own wrongdoing, from performing the alleged agreement with defendants. In that situation it is the rule in this state (and the weight of authority elsewhere) that the disbarred attorney cannot recover any compensation (either on contract or quantum meruit) for any services previously rendered under a contingent fee contract. Kimmie v. Terminal R. Ass'n of St. Louis, 344 Mo. 412, 126 S.W.2d 1197; Egan v. Waggoner, 41 S.D. 239, 170 N.W. 142; Davenport v. Waggoner, 49 S.D. 592, 207 N.W. 972, 45 A.L.R. 1126; In re Woodworth, 2 Cir., 85 F.2d 50; Fletcher v. Krise, 73 App.D. C. 266, 120 F.2d 809. The theory of the Kimmie case and the cases it follows is that the disbarment of an attorney for voluntary misconduct is the equivalent to a voluntary abandonment of his contract of employment and hence he cannot recover for the services he has rendered. For the contrary view see Stein v. Shaw, 6 N.J. 525, 79 A.2d 310.

■ The question remains as to whether plaintiff should have been afforded an opportunity to file an amended petition. It appears from the transcript that the judgment sustaining the motion to dismiss and dismissing said "petition and cause with prejudice" was entered without prior notice to plaintiff of the court's intention to enter the same so that plaintiff did not have the opportunity to ask leave to file an amended petition before the entry thereof. The judgment entered was final and plaintiff could not thereafter obtain leave to file such a petition unless the court would set aside the judgment or grant a new trial. Plaintiff sought that relief in a motion filed eight days thereafter. When that motion was heard four days later, plaintiff had an amended petition prepared and offered at that time (if the judgment was set aside and leave given to file same) to file it, and, if defendants desired to refile their motion to dismiss, to argue same that day.

■ "A party may amend his pleadings as a matter of course at any time before a responsive pleading is filed and served, or, if the pleading is one to which no responsive pleading is required and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty days after it is filed. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires."* (Italics ours.) Section 509.490 RSMo 1949, V.A.M.S. Under circumstances existing in Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W.2d 25, 29, we stated that "the purpose and intent of the Code would not be consummated by sustaining a motion to dismiss with prejudice * * * where the pleader has not been allowed reasonable time or opportunity to amend, or to avail himself of the other procedure provided by the Code, if necessary, for ascertaining actual facts which would enable him to amend and state a claim." We have also said that, "In the absence of prejudice to other parties or harmful consequences of delay, courts should be extremely liberal in permitting amendments." White v. Sievers, 359 Mo. 145, 221 S.W.2d 118, 122. The foregoing will demonstrate that the quoted code provision has been interpreted to require that trial courts be abundantly liberal in granting leave to amend. The soundness of that provision becomes even more apparent when considered in connection with the fact that the rule against departure has been abrogated by the new code. White v. Sievers, supra.

■ We have often said that the question of whether leave should be granted to amend pleadings is a matter primarily within the discretion of the trial court. This is necessarily so because the request sometimes comes during the trial or under other unusual circumstances when the trial court can best judge as to the effect of the amendment upon the parties. However, when a motion to dismiss a petition has been sustained and plaintiff desires to file an amended petition, it would seem that he should be afforded at least one opportunity to restate his claim for relief unless, of course, some fact appears which would preclude him from stating a claim.

In the instant case there had been no undue delay. The petition was filed on November 28, 1956, the motion to dismiss was argued on December 18, and the judgment of dismissal was entered on February 6, 1957. When the trial court concluded that the petition did not state a claim upon which recovery could be had, it would seem that under the instant circumstances justice would have been better served if plaintiff had been afforded an opportunity to reinvestigate the facts and the law applicable thereto in an effort to prepare an amended petition which would state a claim upon which relief could be granted. We think the order of dismissal should have so provided. The granting of a reasonable time for that purpose could not have prejudiced the defendants and we cannot conceive of any harmful consequences from the slight delay resulting therefrom. Since the order

sustaining the motion to dismiss failed to provide leave for filing an amended petition, we have the view that the timely motion to vacate should have been sustained and plaintiff's request to file such a petition granted at that time. In connection with the foregoing we note that plaintiff has stated in his reply brief that if permitted to amend he could make averments that would negative the inference we have heretofore drawn to the effect that Osborne had agreed with defendants to render legal services after December 10, 1951.

It is apparent from the recitals in the judgment that the trial court concluded that the fact that plaintiff and his assignor had surrendered their licenses on December 10, 1951, would preclude plaintiff from stating a claim upon which relief could be granted, and therefore determined that it would be useless to grant leave to amend. We have considered the petition and various suggestions in the briefs in relation thereto and have concluded that we cannot confidently say that plaintiff is completely barred by the foregoing surrenders from stating a claim upon which recovery could be had for services rendered by Osborne prior to December 10, 1951. We accordingly rule that the trial court erred in its failure and refusal to permit the filing of an amended petition herein and hence the judgment should be reversed and cause remanded.

The motion of respondents (taken with the case) to dismiss the appeal for failure of appellant to comply with Supreme Court Rule 1.08, 42 V.A.M.S., is overruled.

The judgment is reversed and cause remanded.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.