Robert GOMILLIA, Appellant,

v.

MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Respondent.

No. 48042.

Supreme Court of Missouri,
Division No. 1.
April 10, 1961.

Wilson Gray, St. Louis, for plaintiff-appellant.

George W. Holmes, Mark M. Hennelly, Allen D. Churchill, St. Louis, for respondent.

HOLLINGSWORTH, Judge.

Plaintiff, a former employee of defendant, seeks in the first count of his petition to recover $10,000 actual damages and $20,000 punitive damages for his allegedly .

wrongful discharge in violation of the provisions of an employment agreement between defendant and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, of which plaintiff was a member. In the second count he sought recovery of $5,000 as damages for the alleged refusal of defendant to furnish him, upon written request, a proper service letter following his dismissal. The second count was abandoned at trial. The jury returned a verdict for defendant on the first count. Plaintiff has appealed from the judgment rendered in accordance with the verdict.

From 1944 until March 27, 1955, plaintiff was employed by defendant as a platform laborer in its freight department at the City of St. Louis Terminal. During his employment he sustained personal injuries on four different occasions, the last time being in October, 1954, while moving a crated motor onto a two-wheeled truck. He did not thereafter perform any service for defendant. Under date of March 7, 1955, R. L. Witherspoon, an attorney in the City of St. Louis, with whom plaintiff's present attorney is associated, addressed a letter to defendant stating that he represented plaintiff in a claim for damages for the injuries sustained by him on October 4, 1954, for which services he, Witherspoon, was to receive 33⅓ per cent of the proceeds of the claim, and that Witherspoon desired to discuss the claim with defendant.

At all of the times herein material, plaintiff was a member of Local 280 of said union, during which time there was a written agreement existing between the union and defendant prescribing the conditions of employment and dismissal of its members by defendant. In March, 1955, and, in fact, since October 28, 1953, defendant had been conducting an investigation into certain railroad passes requested by and issued to plaintiff during the years of 1953 and 1954, for the use of his allegedly dependent and allegedly not gainfully employed wife, Rosalie Gomillia. Defendant's rules permitted the issuance of passes over its line and con-

necting carriers to its employees and the dependent members of their families residing under the same roof with the applicants. Admittedly, defendant had signed the three hereinafter described applications, by virtue of which he had acquired passes for the use of his wife. Each application stated that his wife, Rosalie, was dependent upon him, was not gainfully employed and that she lived under the same roof with him.

As a result of the investigation of the circumstances under which plaintiff obtained these passes, Howard Jones, superintendent of defendant's St. Louis Terminal, issued a notice to plaintiff under date of March 21, 1955, at 816 N. 17th Street, St. Louis, reading as follows:

"Report to my office at 3001 Chouteau Avenue, St. Louis, Missouri, at 10:00 AM, Thursday, March 24th, 1955, for investigation to determine cause of and your responsibility for falsifying requests made by you for transportation, as follows:

"10/26/53—Request for pass in favor of Robert Gomillia and Dependent Wife Rosie Lee, 35, St. Louis, Mo., to New Orleans, La., and return via Missouri Pacific Railroad.

"7/1/54—Request for pass in favor of Rosalie Gomillia, Wife, 36, and Dependent Son Robert, 13, St. Louis, Mo., to Leland, Mississippi, and return, via Illinois Central Railroad.

"9/20/54—Request for pass in favor of Rosie Gomillia, Wife, 36, St. Louis, Mo., to Toledo, Ohio, and return via New York Central Railroad.

"All three (3) requests for transportation made by you, as listed above, state that the persons for whom the passes were requested resided under the same roof with you and that they were entirely dependent upon you for support."

The above notice was issued pursuant to Rule 18 of the aforesaid agreement with said union. That rule, entitled "Discipline

and Grievances", insofar as pertinent, reads:

"(a) An employe who has been in service more than 60 days * * * shall not be disciplined or dismissed without investigation. * * * The investigation shall be held within seven days of the date when charged with the offence or held from service. * * *

"At a reasonable time prior to the investigation he shall be advised of the precise charge in writing against him, and shall have a reasonable opportunity to secure the presence of necessary witnesses and representative.

"(b) An employe dissatisfied with the decision shall have a fair and impartial hearing before the next higher officer, provided written request is made to such officer, and copy furnished to Carrier representative whose decision is appealed, within 10 days. Hearing shall be held within 10 days after date of request and decision rendered within 10 days after hearing.

"(c) The procedure outlined in Section (b) shall govern in connection with appeals to each succeeding officer, except that when appeal is handled and made by the General Chairman, the time limits for appeal, hearing and decision shall be 60 days, instead of 10 days, for each. If further handling is desired following decision of the highest officer, the proceedings will be instituted and progressed as expeditiously as possible.

"(d) The right of appeal by employes or their representatives in the regular order of succession and in the manner prescribed up to and inclusive of the highest official designated by the railroad to whom appeal may be made, is hereby established.

"(e) An employe may be represented at investigations and hearings by one or more duly accredited representatives of his choice, who will be permitted to examine witnesses. If the employe does not desire one or more duly accredited representatives to represent him, the employe may act as representative and will be permitted to examine witnesses."

Rule 41 of said agreement, as amended on August 24, 1954, in substance, defines the term "duly accredited representative" to mean the "regularly constituted Committee (of carriers and employees) and/or the officers" of said union of which the committee is a part; and provides: "The duly accredited representatives shall have the right to participate in investigations, hearings and appeals growing out of these rules."

Upon receipt of the notice, plaintiff asked his then attorney, Mr. Witherspoon, to attend the hearing with him but Mr. Witherspoon sent plaintiff's present attorney, Mr. Gray, in his stead. The hearing was conducted as scheduled before L. V. Hobbs, defendant's assistant superintendent. A transcript thereof (not introduced in evidence, but the contents of which were referred to during the trial) is before the court.

When the hearing began, Mr. Gray, upon being interrogated by the chairman as to whether he was either a member of the union or one of its accredited representatives, admitted that he was neither. He was thereupon excluded from the room. No complaint is leveled against that action. Ralph C. Robertson, chairman of Local 280 of said union, concededly a "duly accredited representative" of the union, was thereupon called by Mr. Jones and requested to represent plaintiff. Mr. Robertson assented and appeared forthwith and thereafter, without objection from plaintiff, participated in the hearing as plaintiff's duly accredited representative. A facsimile copy of the transcript of said hearing shows that the examination of the witnesses, to wit: plaintiff, his wife, Rosalie, and his sister-in-law, Callie Johnson, was conducted by Mr. Hobbs. As the questions were asked and the answers given, each

witness signed each typewritten page of his or her statement as it was transcribed. At the conclusion of the hearing, both plaintiff and his duly accredited representative signed a joint statement reciting: (1) that after hearing the testimony of all of the witnesses present, neither plaintiff nor his accredited representative desired any other witnesses; (2) that each of them had been given the opportunity to ask all the questions he desired to ask of any witness; and (3) that neither plaintiff nor his representative wished to insert any exceptions in the record concerning the manner in which the hearing had been conducted.

The content of the transcript, composed of questions and answers, is much too long to set forth or even to digest in this opinion. Suffice to say that Rosalie Gomillia, upon interrogation by Mr. Hobbs, stated: (1) That she did not receive and use a pass requested and (admittedly) received by plaintiff on October 26, 1953, allegedly for the use of his dependent wife (Rosalie) from St. Louis to New Orleans and return; and that at that time she was in fact employed and self-sustaining, although she could not remember whether plaintiff, at that precise time, may have been contributing to her support. (2) That she did receive and use a pass requested by plaintiff for her and plaintiff's dependent son, Robert, (by a former wife) on July 1, 1954, from St. Louis to Leland, Mississippi, but that the son did not accompany her; and that she, at that time, was in fact gainfully employed and plaintiff was not contributing to her support. (3) That she never saw the pass requested by plaintiff for use of Rosalie Gomillia on September 28, 1954, to Toledo, Ohio; that she was not living with plaintiff on that date; that, on that date, she was in fact gainfully employed and plaintiff was not then giving her any money. Callie Johnson, sister-in-law of plaintiff, upon interrogation by Mr. Hobbs, stated that she used the pass obtained by plaintiff (for the use of his allegedly dependent wife, Rosalie) to go from St. Louis to Toledo and return. Plaintiff, upon interrogation by Mr. Hobbs, stated that he received proper notice of the investigation, was ready for hearing and that he wanted Mr. Robertson to represent him; admitted that he signed the applications for the three passes in question; admitted that he was not living with Rosalie as her husband at the time the passes were applied for and issued to him and that he was not supporting her.

The transcript of the hearing, as taken and certified by defendant's assistant St. Louis Terminal superintendent, L. V. Hobbs, was thereupon transmitted to Howard Jones, superintendent of defendant's St. Louis Terminal (the official before whom plaintiff stood charged). Mr. Jones determined the evidence was sufficient to warrant dismissal of plaintiff from defendant's service for falsifying pass applications and, on March 27, 1955, issued and caused to be delivered to plaintiff a letter advising him: "You are hereby advised that you are dismissed from the service of this company account falsifying statements on requests for free transportation, Oct. 26, 1953, July 1, 1954 and Sept. 20, 1954. Your record now stands Dismissed. H. Jones, Superintendent."

Within several days thereafter, plaintiff conferred with Robertson (his union accredited representative) who advised against taking an appeal. Plaintiff then conferred with his attorney, Mr. Witherspoon, who, under date of April 2, 1955, prepared and mailed to "Personnel Department" a notice of appeal reading as follows:

"I, Robert Gomilia, do hereby appeal from the decision rendered March 27, 1955, by Superintendent H. Jones, dismissing me from service.

"Said decision is improper and erroneous, among other things as follows:

"1. The evidence does not warrant a dismissal, and is insufficient to sustain the same.

"2. The hearing officer did not give the employee reasonable time and opportunity to prepare his defense to the charges, in that the hearing officer knew that the employee was sick and under the treatment of physicians.

"3. The hearing officer improperly and wrongfully denied the employee the opportunity to be represented at said hearing by a representative of his own choosing.

"4. The hearing officer conducted said hearing and investigation in a rude manner, and made efforts to intimidate the employee.

"5. The hearing officer wrongfully, failed and refused to give the employee a copy of the transcript and stenographic record of the hearing and investigation.

"6. The employees, therefore, prays that the decision of the hearing officer be set aside, and for naught held, and that this employee be re-instated with pay and all rights restored to him.

"Respectfully Submitted
"Robert Gomilia, employee
"By R. L. Witherspoon."

On the same date Mr. Witherspoon signed in behalf of plaintiff and mailed to Mr. Jones, defendant's superintendent, a letter stating: "Enclosed is a copy of my appeal from your decision to the next higher official for a review of your decision and to set the same aside." Under date of April 8, 1955, T. Short, defendant's chief personnel officer, wrote plaintiff as follows:

"We have received your letter of April 2, 1955, wherein you adivse that you are appealing from decision rendered March 27, 1955, by Superintendent H. Jones, dismissing you from service.

"If you are dissatisfied and have a grievance about Mr. Jones dismissing you, then the matter should be handled through the proper channels as prescribed in the agreement and not appealed direct to this office."

The record shows no further steps taken by plaintiff to perfect or prosecute any appeal from the order of dismissal.

Thereafter, on April 20, 1955, plaintiff and his attorney, R. L. Witherspoon, for a consideration of $2,000 there duly paid, executed and delivered to defendant an agreement wherein plaintiff did "fully and forever release, discharge and acquit [defendant] of and from all actions, causes of actions, suits and judgments, claims and demands * * * sustained by him" on October 4, 1954; and which release also stated: "This settlement is made upon claimant's representations that he is permanently injured and in consideration of this settlement, it is understood and agreed that said Robert Gomillia will not hereafter be employed in any capacity by said Trustee or his successors in interest, and that his seniority rights as an employee of said Trustee or his successors are terminated."

This suit was instituted some two and one half years thereafter, to wit: on November 15, 1957. The petition alleged the contract existing between plaintiff's union and defendant, the charges made against him by defendant, his innocence thereof, the hearing and his discharge following said hearing. The petition then alleges that said discharge was based "on said illegal testimony" and in violation of Rule 18 of the above mentioned agreement, in this: (1) that plaintiff was not given a reasonable time, under the circumstances, to secure witnesses in his defense; (2) plaintiff was denied the right of appeal; (3) the procedure outlined in said Rule 18 was not followed; (4) plaintiff was denied the right to handle his own case; (5) plaintiff was denied a copy of the transcript of the hearing when he demanded the same; (6) the charge against the plaintiff was not properly investigated. Defendant's answer denied the allegations of wrongful conduct on its part and pleaded: (a) that plaintiff failed to exhaust the administrative remedies required by the union agreement and was not, therefore, entitled to maintain this action; and (b) the release is a waiver of

all · rights herein asserted by plaintiff. Plaintiff's amended reply denied the defenses pleaded by defendant and affirmatively pleaded that the release was without consideration.

Prior to trial defendant moved for dismissal of the action on grounds plaintiff had not exhausted the administrative procedure required by the contract between the union and defendant. Following the hearing of testimony, the trial court overruled the motion. The transcript does not set forth the evidence adduced at that hearing, but a partial transcript (supplied by plaintiff) indicates that the trial court deemed the provisions of Rule 18 to be ambiguous and that plaintiff made an attempt to appeal "when he erroneously sent this letter (prepared by Mr. Witherspoon) to the Personnel Department."

The case was tried to a jury. The transcript consists of more than 300 pages. At the close of all of the evidence, both plaintiff and defendant filed motions for directed verdict, both of which were denied. Plaintiff's motion for directed verdict assigns no grounds other than a prayer for an instruction "that under the law and the evidence [the] verdict must be for the plaintiff on Count 1 of his petition." Defendant's motion, among other grounds, stated: "All the evidence shows that plaintiff has failed to exhaust the administrative remedies required by the provisions of the Union Agreement, * * * effective September 1, 1952, and the provisions of the Union Agreement made between defendant and plaintiff's duly authorized representatives, * * * dated August 21, 1954, between [the] Railroads represented by the Eastern, Western and Southwestern Carriers' Conference Committees and the Employees of such Railroads, represented by the Employees' National Conference Committee, * * *."

The trial court gave in behalf of plaintiff an instruction directing a verdict for plaintiff if the jury found he had not been allowed a fair and impartial investigation and hearing in any or all of the following respects: "(1) Was not allowed to have a duly accredited representative of his choice nor allowed to represent himself, if you find that he did so desire, or (2) Was not given a reasonable time and opportunity to secure the presence of necessary witnesses on his behalf or duly accredited representatives or to represent himself, if you so find, or (3) That on his request, plaintiff was not given a copy of each statement made a matter of record at the investigation and signed by the witnesses, if you so find, your verdict will be for the plaintiff and · against the · defendant of Plaintiff's petition."

The trial court gave in behalf of defendant (a) an instruction directing a verdict for defendant if the jury found that at the time plaintiff signed the release he waived all rights to further employment by defendant; (b) an instruction directing a verdict for defendant if the jury found plaintiff had violated defendant's rule in obtaining the aforesaid passes for his wife while she was not living under the same roof with him and was not dependent upon him for her support and that plaintiff had had a fair hearing in accordance with Rule 18; and (c) an instruction directing a verdict for defendant if plaintiff had not complied with the appeal procedure required by Rule 18 of the union agreement.

The view we have of this case renders it unnecessary to detail the testimony given at the trial other than that above set forth, except to note:

(1) That all of the evidence, including that of plaintiff, shows that plaintiff did not comply with sections (b), (c) and (d) of Rule 18 (italics supplied), to wit:

"(b) An employe dissatisfied with the decision shall have a fair and impartial hearing *before the next higher officer, provided written request is made to such officer* * * *;

"(c) The procedure (with a time exception not material) outlined in Section (b) *shall govern in connection*

*with appeals to each succeeding officer,
\* \* \*;*

"(d) The right of appeal by employes or their representatives in the regular order of succession *and in the manner prescribed up to and inclusive of the highest official designated by the railroad to whom an appeal may be made, is hereby established.*"

(2) There are at least three officers of defendant in next higher succession after the terminal superintendent, Jones, to whom succeeding appeals may be made, to wit: the division superintendent, the assistant general manager, and the chief personnel officer.

■ Now it stands admitted that following the hearing and after being advised by his union accredited chairman, Robertson, not to take an appeal, plaintiff, without further ado, sought out Mr. Witherspoon, who, insofar as the record shows, without any effort whatever to obtain information as to the next higher railroad official in succession, deliberately sent the appeal to the *highest officer in succession,* in direct violation of the specific provisions of his union's contract. Moreover, although plaintiff was promptly (on April 8, 1955) advised by defendant's chief personnel officer, Mr. Short, that "the matter should be handled through the proper channels as prescribed in the agreement *and not appealed direct to this office,*" the record is completely devoid of any showing of any effort whatever on the part of plaintiff or his counsel to comply with the provisions of the contract. To the contrary, the record does show that twelve days thereafter, on April 20, 1955, when plaintiff and his counsel negotiated the settlement of plaintiff's claim for personal injuries sustained in October of 1954, they also, in the same instrument, "in consideration of this settlement," expressly relinquished plaintiff's seniority rights as an employee of defendant. Obviously, plaintiff had no right of continued employment save and except the "seniority rights" granted him in the employment contract

made in his behalf by his union. ACF Industries, Inc. v. Industrial Commission, Mo., 320 S.W.2d 484, 491 [6–9]. Plaintiff pleaded neither fraud nor mistake in the execution of the release. His sole plea in that respect was that the release "is without consideration as to the cause of action set out in plaintiff's Count One." The release expressly recites the consideration; admittedly it was paid in full. There is not a scintilla of evidence to the contrary. It would, therefore, seem to follow beyond question that when plaintiff, for a valuable consideration, relinquished his rights as an employee of defendant, he necessarily waived any right he may have had to compensatory damages. See Maynard v. Durham & Southern Ry. Co., 1961, 81 S.Ct. 561. (Incidentally, it is questionable (we do not decide) whether such a *breach of the union contract as here pleaded* would support an award of punitive damages, even though the breach was wrongful and malicious. See Williams v. Kansas City Public Service Co., Mo., 294 S.W.2d 36, 40 [7, 8], wherein plaintiff sought punitive damages for his alleged wrongful discharge from employment in violation of an employment contract between his employer and his union.) Following the execution of that release, plaintiff still took no action to perfect or to prosecute his appeal and the matter lay dormant until this suit was brought more than two years after the release was signed. Certainly, we know of no legal nor moral duty on the part of the defendant to waive compliance with those vital and important provisions of the contract.

■ In 1936, the St. Louis Court of Appeals, in Reed v. St. Louis Southwestern Railroad Co., 95 S.W.2d 887, 888–889, held that when a contract of employment provided, as in the instant case, that a discharged employee may seek redress by appealing to certain designated officers, such employee was required to pursue and exhaust his contract remedy and that he could not lawfully seek redress in the courts of Missouri until he had exhausted the rem-

edies provided in his contract. Thereafter, in 1953, the Kansas City Court of Appeals, in the case of Mayfield v. Thompson, 262 S.W.2d 157, loc. cit. 162, gave its unqualified endorsement to the holding in the Reed case, supra, saying of it: "The Reed case is in accord with the prevailing view. 31 Amer.Jur., Labor, sec. 123, p. 881; Annotation 95 A.L.R. 10, 52; Hamilton, Individual Rights Arising from Collective Labor Contracts, 3 Mo.L.Rev. 252, 266. We think the decision in Reed case is based on sound reasoning and that the rule announced in that case is applicable here. Under the law as stated by the court of appeals, the plaintiff herein was required to show that he had exhausted the administrative remedies provided by the contract in question in order to sustain his cause of action. While the plaintiff had the burden of showing that he had exhausted those remedies, the defendant had the right to show that plaintiff had failed to do so." Likewise, the Supreme Court of the United States, in the case of Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 661, 73 S.Ct. 906, 910, 97 L.Ed. 1325, said: "Where the applicable law permits his recovery of damages without showing his prior exhaustion of his administrative remedies, he may so recover, as he did in the Moore litigation, supra, under Mississippi law.

"On the other hand, if the applicable local law, as in Missouri, requires an employee to exhaust his administrative remedies under his employment contract in order to sustain his cause of action, he must show that he has done so. Here respondent was employed by a carrier, subject to Title II of the Railway Labor Act, and his employment contract contained many administrative steps for his relief, all of which were consistent with that Act. Accordingly, while he was free to resort to the courts for relief, he was there required by the law of Missouri to show that he had exhausted the very administrative procedure contemplated by the Railway Labor Act. In the instant case, he was not able to do so and his complaint was properly dismissed." See also Donahoo v. Thompson, Mo., 291 S.W.2d 70.

The foregoing cases are in accord with the general law of Missouri relating to the exhaustion of remedies agreed to in contracts or the administrative remedies provided in proceedings before board and bureaus before resort to the courts for redress. See cases collected 2 Mo.Dig., Administrative Law and Procedure, ☞ 229. We think they are sound.

■ Plaintiff further contends, however, that when defendant failed to appeal from the ruling of the trial court denying its motion to dismiss predicated upon plaintiff's failure to exhaust the procedures prescribed by the union contract, the point was concluded and is now res judicata on that question. Obviously, plaintiff errs in that contention. The order was in no wise a separate or final appealable judgment.

■ Plaintiff also contends that the trial court erred in refusing to require defendant to elect which of two defenses upon which it would go to trial, to wit: its denial of wrongful discharge, and its alternative claim of nonliability for such discharge, even if it were wrongful, by virtue of the release pleaded. Those defenses are not inconsistent. Certainly, defendant was entitled to deny the charge of wrongful discharge of plaintiff and, in the alternative, to plead and prove, if possible, that even if the discharge was wrongful, defendant thereafter, for a valuable consideration, had purchased its acquittal from further liability. The contention is without merit.

The conclusions above reached also make it unnecessary to consider the remaining assignments made by plaintiff. It appearing that plaintiff did not exhaust the remedies provided in the union contract under which he was employed prior to bringing this action, the judgment of the trial court was for the right party and should be and is affirmed.

All concur.