**Robert B. SYMPSON, as assignee of Alfred H. Osborne, Appellant,**

v.

**Clay C. ROGERS, Lyman Field and Reed O. Gentry, partners doing business under the style and firm name of Rogers, Field and Gentry, Respondents.**

No. 51593.

Supreme Court of Missouri,
Division No. 2.

Sept. 12, 1966.

Robert B. Sympson, Edgerton, appellant, pro se.

Charles L. Carr, Kansas City, for respondents.

EAGER, Presiding Judge.

This is a second appeal of the case shown at 314 S.W.2d 717. The suit is one by plaintiff as assignee of Alfred H. Osborne, a former lawyer, for compensation allegedly due Osborne under an oral contract with the defendants, who are lawyers practicing in Kansas City as partners. Both appeals were taken by plaintiff from judgments entered upon motions to dismiss. Consequently, we confine our statement of facts, generally, to the allegations of the petitions; however, it is conceded in the present case and it was agreed of record in the prior case, that both Osborne and this plaintiff surrendered their licenses to practice law and were disbarred by this court on December 10, 1951. We also take judicial notice of that fact. It is not indicated, however, that the disbarments had any connection with the cases in which compensation is now sought. The present transcript is somewhat irregular in certain respects but, since respondents have approved it and it contains the material record, we shall make no point of it.

We shall abbreviate radically the allegations of the petition and omit all formal allegations. Its substance is as follows: that prior to December 10, 1951, Osborne was a duly licensed attorney, specializing in personal injury litigation; that he had 50% contingent contracts in five listed personal injury suits against the Kansas City Public Service Company, all of which cases had been filed, investigated and prepared for trial, and one of which had been tried (a first time); that Osborne, prior to December 10, 1951, had forwarded these files to defendants, upon "an understanding" with his clients; that disbarment proceedings had been filed against Osborne; that he decided to surrender his license, and that he so advised defendants and requested the return of the five cases and files so that he might "settle or dispose of" them; that defendants then suggested that they and Osborne "negotiate a new agreement" and that they did agree (all prior to December 10, 1951, a somewhat "magic" date) as follows: that Osborne should be deemed to have "already earned" 50% of all fees eventually obtained by defendants; that Osborne would recommend that his respective clients employ defendants to prosecute their claims, that he would release all such clients from any liens and claims of his, and that by reason thereof and such services as Osborne "might remain able to give, perform, or provide in, and such as," assisting to locate and relocate witnesses and clients, and in assisting to notify such witnesses and clients when and where to appear for depositions, medical examinations and trial and by assisting in arranging transportation, *"if requested by defendants so to do,"* it was agreed that defendants would arrange to collect one-half of the compensation for Osborne as money earned by him, or they would pay him a sum equal to one-half of any amounts they obtained. It was

further alleged that Osborne carried out all such arrangements, that his clients accepted defendants as their counsel and signed new contracts, and that thereafter *Osborne* "performed all such services as he remained able to perform" in locating and producing witnesses, etc., *"when requested so to do by defendants"*; that between February 11, 1952, and July 23, 1953, by settlement (in three cases) or trial and appeal (in two) defendants collected the total sum of $78,361.25, out of which they derived total fees of $39,180.62; that defendants either collected one-half of such fees for Osborne or became indebted to him in that amount, to-wit, $19,590.31, but refused at all times to pay him, although they had admitted to Mr. Fred Hulse (Missouri Bar Administration) that they "were holding the amount Osborne or his assignee, was and is entitled to * * *"; that prior to December 10, 1951, Osborne assigned to plaintiff all his rights and claims which had accrued or might accrue under his contracts of employment in the five listed suits or by virtue of any forwarding agreement or contract with new attorneys. Plaintiff prayed judgment for $19,590.31, with interest.

At this point we find it necessary to relate the developments subsequent to the filing of the (amended) petition just digested. The filing of an amended petition had been authorized by the prior opinion of this court, although there is much controversy between the parties as to the full meaning of that opinion. After filing the amended petition in the cause at Kansas City, plaintiff voluntarily dismissed that case without prejudice and, on the same day, September 12, 1958, refiled the same petition as a new suit at Independence (which, of course, is in the same circuit and county). On October 6, 1958, defendants filed a lengthy motion to dismiss; on January 9, 1959, that motion was overruled, the court acting through Judge Jensen; defendants filed a very lengthy answer on February 12, 1959. In 1963 plaintiff filed a motion to strike many parts of the answer, and still later, in 1964, filed also a motion to require the production or inspection of the entire files in the five listed cases, along with certain other documents and records. On December 4, 1964, defendants filed another motion to dismiss; no leave to file is shown, but the court considered it and indeed its sustention is the basis of the present appeal. In brief substance it alleged: that the petition failed to state a claim; that plaintiff could have no greater rights than his assignor had; that an executory contract for "personal services" could not validly be assigned; that both Osborne and plaintiff were disbarred on December 10, 1951; that they were thereby precluded from performing the alleged agreement sued on, and could not legally collect any compensation on contingent contracts, even for services previously performed; that the judgment in Sympson v. Rogers et al., Mo., 314 S.W. 2d 717, was res adjudicata of plaintiff's right to recover anything, this being a suit on the same cause of action between the same parties; that defendants are prohibited from dividing legal fees with any layman; that the assignment was a fraudulent attempt to evade the law; that Osborne was automatically disbarred in Arkansas, where he had also been licensed, upon his disbarment in Missouri; that plaintiff was estopped to alter the details of the alleged contract as previously pleaded, and as adjudicated on the prior appeal; that plaintiff had failed to prosecute the action with any diligence whatever; that the purported assignment to plaintiff was indefinite, lacked consideration, and that the mere recommending of clients to defendants did not constitute "services" for which compensation might be charged.

On December 18, 1964, a hearing was held on the motion to dismiss before Judge James; he permitted defendant to introduce various exhibits which are sent here as part of the transcript, but which we deem to be largely immaterial. The hearing was not concluded but was continued,

and Judge James died before making any ruling. On June 9, 1965, the succeeding Judge, David T. Cavanaugh, entered an order which we quote, as follows: "Now on this 9th day of June, 1965, defendants' Motion to Dismiss heretofore filed in said cause, having been duly considered by the Court, together with the written Suggestions In Support thereof, and the written Suggestions of the plaintiff in opposition thereto, and the Court being fully advised in the premises and finding that the plaintiff, Robert B. Sympson, and Alfred H. Osborne, plaintiff's assignor, voluntarily having surrendered their licenses to practice law to the Supreme Court of this State on December 10, 1951, and the said Supreme Court having disbarred from the practice of law both plaintiff and said assignor, Alfred H. Osborne, the Court does sustain said defendants' Motion to Dismiss plaintiff's petition and said petition is by the Court dismissed with prejudice at plaintiff's cost.

"It is further ordered by the Court that plaintiff's Motion For Production of Documents be, and the same is overruled; and it is further ordered by the Court, that plaintiff's Motion to Strike parts of defendants' answer be, and the same is by the Court overruled." From that order plaintiff took this appeal.

■ We note first that this is not a suit in quantum meruit, nor is it a suit against any of Osborne's former clients; it is strictly a suit on a contract alleged to have been made by the successor attorneys. Such also was the prior case. 314 S.W.2d 717. Aside from ruling on certain formal matters, the court held in that prior case that the petition did not state a valid claim, but that the trial court should have permitted an amendment. The only matter specifically pointed out as making the petition defective was the permitted *"inference"* that under the agreement between Osborne and defendants, Osborne might be expected to continue to render legal services in assisting the defendants after his disbarment. The court assigned this

as "one reason" for holding the petition defective; it then proceeded to state, as the rule in Missouri and as the weight of authority, loc. cit. 721, that: "* * * the disbarred attorney cannot recover any compensation (either on contract or quantum meruit) for any services previously rendered under a contingent fee contract. Kimmie v. Terminal R. Ass'n of St. Louis, 344 Mo. 412, 126 S.W.2d 1197; Egan v. Waggoner, 41 S.D. 239, 170 N.W. 142; Davenport v. Waggoner, 49 S.D. 592, 207 N.W. 972, 45 A.L.R. 1126; In re Woodworth, 2 Cir., 85 F.2d 50; Fletcher v. Krise, 73 App.D.C. 266, 120 F.2d 809. The theory of the Kimmie case and the cases it follows is that the disbarment of an attorney for voluntary misconduct is the equivalent to a voluntary abandonment of his contract of employment and hence he cannot recover for the services he has rendered. For the contrary view see Stein v. Shaw, 6 N.J. 525, 79 A.2d 310." However, as already indicated, the court remanded the case with leave to plaintiff to amend, thus holding that a cause of action could be stated under these circumstances. In that connection it was said, loc. cit. 723: "In connection with the foregoing we note that plaintiff has stated in his reply brief that if permitted to amend he could make averments that would negative the inference we have heretofore drawn to the effect that Osborne had agreed with the defendants to render legal services after December 10, 1951. * * * We have considered the petition and various suggestions in the briefs in relation thereto and have concluded that we cannot confidently say that plaintiff is completely barred by the foregoing surrenders from stating a claim upon which recovery could be had for services rendered by Osborne prior to December 10, 1951." While some of the language used may seem to be inconsistent with the result of the case, we do not take it to be a ruling that no compensation could be recovered here against the succeeding attorneys, but rather the contrary. The opinion does not preclude the plaintiff's claim upon a theory of res adjudicata.

While much has been said in the briefs, pro and con, in comparing the prior petition with the present one, they are substantially similar so far as our issues are concerned, except that plaintiff has now omitted all allegations which "infer" that the agreement would have permitted or required Osborne to perform future legal services, and he has substituted the allegations already specified, which would seem to call only for such services as a layman (such as an investigator) could perform.

■ Certain preliminary contentions should be disposed of at this time. Plaintiff says that Judge Cavanaugh could not reverse the prior ruling of Judge Jensen, who had overruled a previous motion to dismiss the same petition. Both, if it be material, were pretrial rulings. The second ruling came nearly six years after the first, and the last motion was filed nearly six years after the defendants answered. However, the failure to state a claim was preserved in the answer and the consideration of the matter on the last occasion may well be regarded as a pretrial consideration of a separate issue, as permitted under Rule 66.02, V.A.M.R. The two rulings were in the same court, the motions were not identical, and we hold that Judge Cavanaugh had the jurisdiction and the power to consider and rule independently upon the present motion to dismiss. The trial judge would have been required to rule independently on the same question, had the case gone to trial on the merits. Kinsella v. Kinsella, 353 Mo. 661, 183 S. W.2d 905. Even the same judge has jurisdiction to "change his mind." State ex rel. Lunsford v. Landon, 304 Mo. 654, 265 S.W. 529. And see, generally, Gomillia v. Missouri Pac. R. Co., Mo., 345 S.W.2d 202.

■ It is also urged that the ruling on the motion to dismiss is not reviewable here because evidence was introduced and considered, and no motion for a new trial was filed. It is true that Judge James permitted the introduction of various exhibits at his partial hearing; while we do not know whether the succeeding judge actually considered these, they were in the record. Counsel for respondents says that the motion stated grounds which required evidence, and that, since the motion was sustained generally without specifying any ground, a motion for new trial was required, citing such cases as State ex rel. Loving v. Trimble, 331 Mo. 446, 53 S.W.2d 1033, and State ex rel. Southwest Nat'l Bank of Kansas City v. Ellison, 266 Mo. 423, 181 S.W. 998. As we interpret the order sustaining the present motion, it stated rather clearly the ground of the ruling,—namely, that because of the *disbarments* neither Osborne nor plaintiff could recover. This was a matter of judicial notice and admission. Moreover, our Rule 73.01(d) permits a consideration of the sufficiency of the evidence in a case tried without a jury without the necessity of a motion for new trial. City of Mt. Vernon v. Garinger, Mo., 395 S.W.2d 214, 215. If that is permissible in reviewing a case tried on the merits, certainly the same principle should be applicable to a ruling on a motion to dismiss. The point is denied.

■ Respondents make the further point that the assignment to plaintiff was invalid because it was in part an assignment of an executory contract for personal services. It is true, generally, that an executory contract for personal services which involve special knowledge, skill or a relation of personal confidence, may not be assigned without the consent of both parties. 6 C.J.S. Assignments § 26, pp. 1074–1075; Allied Pipe Line Corp. v. Studley, Mo.App., 191 S.W.2d 317. The rule is applicable when the personal qualities and acts of "one of the parties form a material and ingredient part of the contract." Allied case, supra. We doubt that the location, relocation, production and transportation of witnesses and clients were matters of such special knowledge or skill as to be governed by the rule; but, so far

as the present petition is concerned, it is alleged that Osborne agreed to perform such services, and that thereafter *Osborne, not plaintiff*, performed all such services as he was requested to perform. Under the allegations, it is doubtful if the obligation was transferred but, in any event, the performance was not delegated. This contention was not and is not a sufficient ground for sustaining the motion to dismiss; if it was and is of any substance, evidence would be required to develop it.

We reach the ultimate question,—namely, may a disbarred attorney recover anything as compensation for services rendered under contingent fee contracts which he did not complete prior to his disbarment? Under the majority rule he certainly may not recover against his client, for it is said that he has been guilty of conduct legally equivalent to an abandonment of the case before completion. Kimmie v. Terminal R. Ass'n of St. Louis, 344 Mo. 412, 126 S.W.2d 1197; In re Woodworth (D.C.N.Y.), 15 F.Supp. 291; same case on appeal, CA 2, 85 F.2d 50; Royden v. Ardoin, 160 Tex. 338, 331 S.W.2d 206, and Fletcher v. Krise, 73 App.D.C. 266, 120 F.2d 809. In Kimmie the actual claim was against a fund deposited in court; there the court quoted with approval from Woodworth, 85 F.2d at loc. cit. 50, and from the two South Dakota cases, Egan and Davenport; in conclusion, the court said, loc. cit. 1201: "In the instant case the claimant, as a result of misconduct, could not continue as the attorney for Kimmie. The misconduct for which he was suspended was voluntary conduct on his part. In other words, his suspension was equivalent to a voluntary abandonment of his contract of employment, and for that reason he cannot recover for services, and he has no lien on the $15,000 fund in the registry of the court." That was a decision that the attorney could not recover any part of the client's total recovery, either on contract or quantum meruit, but in so far as the opinion might be considered as precluding recovery on the contract of

a succeeding lawyer, it would seem to be dictum. The South Dakota cases, Egan v. Waggoner, 41 S.D. 239, 170 N.W. 142, and Davenport v. Waggoner, 49 S.D. 592, 207 N.W. 972, 45 A.L.R. 1126, held that there could be no recovery against the original attorney who employed the plaintiff to assist him in the case, although at that time there was an agreement to divide the fee fifty-fifty. It would seem, however, that the agreement there was made at a time when no disbarment was contemplated by anyone, and thus it might be said that the employing attorney stood in the same position as his client, and that he, too, had been abandoned.

In New York the law is said to be unsettled on the question, but the possibility of a recovery for services rendered prior to disbarment is certainly not precluded, perhaps on quantum meruit. Gary v. Cohen et al., Sup., 231 N.Y.S.2d 394. The California case of Hardy v. San Fernando Valley Chamber of Commerce et al., 99 Cal.App.2d 572, 222 P.2d 314, seems also to leave the law there somewhat "unsettled," although the court did not so state; the rather clear inference was left that, while a disbarred attorney may not recover his full contingent fee as upon the contract, he may be permitted to recover the reasonable value of services previously performed.

In 1951 Chief Justice Vanderbilt wrote a rather illuminating opinion on the subject for the Supreme Court of New Jersey. Stein v. Shaw, 6 N.J. 525, 79 A.2d 310. Therein he held that a disbarred attorney could recover from his client the reasonable value of services performed under a contingent contract prior to his disbarment. The disbarment was for causes not connected with the defendant's litigation, which fact the court noted. The defendant had employed other counsel independently, following the disbarment. That court disagreed with the theory espoused in Davenport and Woodworth, supra, that disbarment constituted a voluntary abandonment without cause; it held that, in fact, when

the order of disbarment makes further performance impossible, there is an automatic termination of the contract by operation of law analogous to those cases where death, illness or insanity has intervened. It further held that the denial of all compensation for services rendered prior to the disbarment would constitute retroactive punishment through economic considerations, which was never intended in disciplinary proceedings.

In the present case plaintiff is not seeking to enforce a recovery from the clients who executed the original contingent fee contracts; nor is he seeking to establish a lien upon a fund paid into court by the clients or on their behalf. We are not required here to accept or reject the majority or minority rule on that question. Plaintiff here is seeking to enforce an oral contract allegedly made with his assignor by other attorneys, who, with their eyes open and with full knowledge that Osborne was about to surrender his license (as specifically alleged), accepted five of his cases for further handling, and agreed to pay him a part of all fees eventually received in the specified cases. Osborne's disbarment certainly did not constitute an abandonment of that contract, voluntary or involuntary, for it was made in contemplation of disbarment, and the petition alleges full performance by Osborne. In this situation Kimmie is not controlling, nor is any other case of those cited and discussed really applicable, except possibly Davenport. We decline to follow it under these circumstances. Both parties have failed to realize the very material distinction between the facts of this case and the facts of substantially all of those cases cited and discussed. This opinion may be inconsistent with certain language used in our prior opinion, Sympson v. Rogers et al., Mo., 314 S.W.2d 717, but it is not inconsistent with the ultimate conclusion there or with the result. We do not hold, nor do we need to hold, that a disbarred attorney may recover any amount directly against his former client on a contingent fee contract.

Lastly, defendants contend that they are prohibited by Rule 4.34 and our decisions such as In re Ellis, 359 Mo. 231, 221 S.W.2d 139, from dividing their fees with either Sympson or Osborne as laymen. Ordinarily, that is true, but the situation here is unusual. By one allegation of this petition defendants are said to have agreed with Osborne, while he was a lawyer, to pay to him a portion of the fees they might eventually receive for his legal services already rendered and, in part, for such services as he might thereafter render which a layman could perform. At another point the petition alleges that Osborne and defendants agreed that Osborne had, by his legal services already rendered, earned one-half of the fees. While we fully recognize, In re Randolph, Mo., 347 S.W.2d 91, certiorari denied 368 U.S. 916, 82 S.Ct. 196, 7 L.Ed.2d 132, that a lawyer may not split fees with a layman, the agreement of defendants here was made with Osborne as a lawyer and chiefly, it would seem, for legal services already rendered. The division of fees in consideration of those services would not come within the prohibition of the rule. When and if this case is tried, the court may determine *from the evidence* whether the rendition of lay services in the future constituted any substantial part of the consideration for the agreement to divide the fees, or whether that part of the agreement was merely incidental. If the former, the agreement was invalid; if the latter, it may stand. The allegations of the petition alone do not afford us a sufficient ground for an intelligent ruling.

Much is said in the briefs concerning plaintiff's motions to strike sundry parts of the answer and his motion for the production of files and documents. After sustaining the motion to dismiss, the court overruled both of these motions; at that time they had become moot. The cause had been dismissed with prejudice. If the

points made are meritorious, new motions may be filed when the case is returned to the trial court. We do not propose to indicate any rulings or views concerning those motions on this appeal, aside from what we have said on the merits. Appellant's motion to "Strike or Disregard" parts of respondents' brief is overruled.

The judgment is reversed; the trial court is directed to overrule the motion to dismiss and permit further proceedings to be taken in the usual course.

All of the Judges concur.