DAVENPORT, Trustee in Bankruptcy of George W. Egan,·
Respondent, v. WAGGONER et al, Appellants.

### (207 N. W. 972.)

(File No. 5389.   Opinion filed March 12, 1926.)

1.   **Attorney and Client—Quantum Meruit—Contracts—Attorney, Contracting With Other Attorneys for Contingent Fee, Cannot, After Failure Fully to Perform, on Quantum Meruit, Recover Greater Amount Than He Could Have Recovered Under Contract.**

Attorney, contracting with other attorneys for share of contingent fee, cannot after failure fully to perform, recover on quantum meruit greater amount than he could have recovered under contract.

2.   **Attorney and Client—Contracts.**

Contract by attorney for contingent fee is one for personal services, and is entire, and not divisible.·

3.   **Appeal and Error.**

Matters decided on former appeal become law of case.

4.   **Attorney and Client—Disbarment—Attorney, Contracting With Other Attorneys for Share of Continguent Fee, Prevented by Disbarment From Completing Services, Held Unable to Recover Therefor.**

Attorney, contracting with other attorneys for share of contingent fee, who was disbarred before case was finally settled, at time when nothing had been definitely won for plaintiff in case, occupied position as if he had wilfully and without just cause abandoned contract, and was not entitled to recover thereon.

Dillon, J., dissenting.

Appeal from Circuit Court, Minnehaha County; HON. L. L. FLEEGER and HON. JOHN T. MEDIN, Judges.

Action by George W. Egan against L. E. Waggoner and B. O. Stordahl, copartners under the firm name of Waggoner & Stordahl, to recover for services as an attorney. After a judgment for the plaintiff was reversed and remanded (41 S. D. 239, 170 N. W. 142), Holton Davenport, as trustee in bankruptcy of George W. Egan, became plaintiff. From a judgment for plaintiff, defendants appeal.   Reversed.

*Danforth & Barron,* of Sioux Falls, for Appellants.

*Boyce, Warren & Fairbank,* of Sioux Falls, for Respondent.

(4) To point four of the opinion, Appellant cited: Justice v. Lairy, 49 N. E. 459, 65 A. S. R. 405; Tenney v. Berger, 45 Am. Rep. 263; Troy v. Hal, 157 Ala. 592, 47 So. 1035; Corson v. Lewis (Neb.), 109 N. W. 735.

Respondent cited: Egan v. Waggoner & Stordahl, 170 N. W. 142; Senoff v. Nealey, 136 N. W. 27, 23 Cyc. 453; Bessie v. Northern Pacific Ry. Co., 105 N. W. 936.

CAMPBELL, J. In June, 1915, the defendants, practicing attorneys in Sioux Falls, entered into a contract with one C. whereby they agreed to prosecute to final conclusion a claim for damages for personal injury against the Wisconsin Granite Company upon a contingent fee, their compensation to be a sum equal to 50 per cent of the ultimate recovery; necessary expenses being first deducted. Thereafter, and in September, 1915, the defendants entered into a subsidiary contract with one Egan, who was also at that time a practicing attorney in Sioux Falls, which contract recites defendants' previous agreement with C., and provides that the said Egan should assist defendants in preparation and trial of said case, and that his compensation should be the one-half part of such attorneys' fees as might be received by the defendants by virtue of their contract with C. The contract between defendants and Egan was made with the knowledge and approval of C. It is admitted by all parties that both contracts contemplated no fee or compensation to the attorneys, excepting a fee contingent upon ultimate success and recovery and proportionate to the amount thereof, without regard to the actual or reasonable value of services which might be rendered by said attorneys. It is further admitted by all that such contracts contemplated that the attorneys thereby retained should continue to render services in the matter to and including the final determination of C's. case.

By virtue of these contracts Egan and the defendants prepared the case for trial, and tried the same in the lower court, where they secured a judgment for C. in the sum of $5,000. From this judgment the defendant corporation appealed to this court. Pending such appeal, after the filing of printed briefs, but before oral argument thereof, in April, 1916, Egan was disbarred. Subsequent to said disbarment, the defendants alone continued to give the case of C. such attention as it required, including oral argument of the same in this court, appearance in this court in oppo-

sition to application for rehearing, etc., with the result that the decision of the lower court in the C. case was here affirmed, and rehearing denied. Clinkscales v. Wisconsin Granite Co., 160 N. W. 843, 38 S. D. 205. Thereafter said judgment was paid, and the defendants, pursuant to their contract with C., received repayment of certain expenses advanced by them, and the sum of approximately $2,553 as a contingent attorneys' fee pursuant to their contract with C.

When defendants received this money, they promptly notified Egan of that fact, and he went to their office. Defendants told Egan that, in view of his disbarment before the case was completed, they felt there should be an adjustment between them whereby they should receive somewhat more than one-half of the total fee. Egan flatly refused to discuss, or consider, any such proposition, and stated that, if he could not have one-half of the total fee, he would take nothing, and that he would show them (the defendants) what the equity of the case was.

Under these circumstances, and within an hour or two after leaving defendant's office, Egan instituted an action against them wherein his amended complaint set out the contracts above referred to, alleged performance upon his part of the contract between himself and defendants, and sought to recover pursuant to the terms of said contract, setting up as the measure of his recovery certain expense money advanced by him, plus one-half of the amount received by defendants as attorneys' fees. In other words, his complaint was based squarely upon the contract between himself and defendants, treating said contract as fully performed upon his part, and seeking full recovery according to the terms thereof. The trial court in that action directed a verdict in favor of Egan, from which the defendants appealed, and the case was reversed in this court. Egan v. Waggoner et al., 170 N. W. 142, 41 S. D. 239.

Subsequent to the decision in Egan v. Waggoner, the present plaintiff, Danvenport, being Egan's trustee in bankruptcty, became the party plaintiff and the complaint was again amended, which second amended complaint sets up the contracts of employment hereinbefore referred to; specifies what services were performed in the C. case by Egan, and what services were performed therein by defendants after Egan's disbarment; sets out

the receiving of the fee of $2,553 by defendants; and alleges that the reasonable value of the services performed by Egan in the earning of said fee as compared with the services performed by defendants was $2,000; and seeks recovery for said $2,000, plus the sum of $73 expense money advanced by Egan. In other words, plaintiff no longer seeks to recover according to his contract, but seeks an amount considerably greater than he could have received by complete performance of the contract, apparently proceeding upon some theory of quantum meruit, but endeavoring to adopt as the measure of recovery, not the actual and reasonable value of services rendered by him, but the contingent or speculative fee of $2,553 actually received, and claiming to recover such proportion thereof as the services rendered by himself before disbarment bear, according to his views, to the entire services rendered by himself and the defendants, both before and after his disbarment, from the beginning to the end of the C. case.

The case was tried below upon this second amended complaint, and was submitted to the jury by the learned trial judge upon a third and still different theory. He directed the jury, in substance, to assume that the total fee of $2,553, which was finally received by defendants, represented the reasonable value of all legal services rendered both by Egan and by the defendants, and upon that basis directed the jury to apportion said sum of $2,553 into two parts, and determine how much was earned by Egan and the defendants prior to Egan's disbarment, and how much was earned by the defendants alone after Egan's disbarment. Then as to the first portion so found to be earned jointly by Egan and defendants, instead of directing a division thereof as sought by the second amended complaint in the proportion which the jury might find the value of the services of Egan bore to the value of the services of defendants, the learned trial judge here departed from any theory of quantum meruit as pleaded in the second amended complaint, and returned to the contract between Egan and the defendants, and directed the jury to find for plaintiff for the one-half of such part of the total fee of $2,553 as they deteremined under the previous instruction to have been earned prior to Egan's disbarment.

The jury found that of the total fee received $1,500 was earned by the defendants alone after Egan was disbarred, and

thereupon defendants' motion for judgment notwithstanding was denied, and judgment was entered in favor of plaintiff for one-half of the fee apportioned by the jury to the period prior to Egan's disbarment, plus certain expense money advanced, amounting in all to $612, from which judgment the defendants now appeal.

[1]   There is no theory of law which would justify any such recovery as was asked by respondent in this second amended complaint whereby respondent sought to recover a considerably larger amount than he could possibly have received if he had fully and completely performed his contract.

[2]   The contract between respondent and appellants, while subsidiary to the contract between appellants and C., was nevertheless in its essential nature a contingent fee contract as the same is ordinarily understood, by virtue of which Egan was to render certain personal services as an attorney to the final conclusion of the C. case, and was to receive as full compensation a share of the recovery in such case. A contingent fee contract of this sort, while it is a contract for personal services, is of a somewhat peculiar nature. In the event of ultimate failure, the attorney will receive nothing for his services. In the event of ultimate success, he may, and very probably will, receive considerably more than the actual and reasonable value of such services; that is, the amount which would be charged by attorneys of similar standing in the same locality for an equivalent amount of time and work of the same sort in a case of the same nature, where the client was to pay for services rendered whether he was ultimately successful or not. The contract is entire and not divisible, and is speculative in its nature. By reason of the fact that, if successful he may receive considerably more than the actual value of services rendered the attorney is willing to accept the risk that he may be unsuccessful and receive nothing. As pointed out by Mr. Justice Lamar (Counsel v. Cummings, 32 S. Ct. 83, 222 U. S. 263, 56 L. ed. 192), the agreement is that compensation will be paid for ultimate success, not for the actual value of services rendered.

[3]   By the decision on the former appeal (Egan v. Waggoner, supra) the following propositions at least have been established between the parties, and have become the law of the case upon this appeal: First, that the contract between Egan and ap-

pellants was terminated by the disbarment of Egan; second, that upon such disbarment Egan was left in the same position with regard to this contract as though he had voluntarily, wrongfully, so far as appellants are concerned, and without any just cause, abandoned the same; third, that at the time of said disbarment he had not substantially performed said contract upon his part, and was not entitled to invoke the rule of substantial performance and thereby recover upon the contract.

Accepting the law of the case as established on the former appeal, and bearing in mind the essential nature of a contingent fee contract, the question is whether or not an attorney, who has partly, but not substantially, performed a contract for the rendition of personal services, for a compensation payable only in the event of final and successful termination, who has willfully and intentionally abandoned said contract without cause before completion, can recover for services rendered prior to such abandonment, and, if so, upon what basis?

[4] The trial court, by its instructions to the jury, allowed recovery on the contract for the part performance and endeavored to apportion the consideration in the contract to the part performed. This was manifestly improper. The contract was one entire contract, and was not subject to being thus divided. So far as Egan was concerned, he was employed, not by the client of appellants, but by the appellants themselves; their client thereto consenting. His employment was to assist them by the rendition of personal services until the final termination of the C. case, upon a contingent fee, and such contract was entire and not severable or divisible, and, having abandoned said contract before the C. case was terminated, without just cause, as settled by the former appeal, we believe the sounder rule to be that by such abandonment he forfeited all right to payment for any services previously rendered. See Fry v. Miles 59 A. 246, 71 N. J. Law, 293; Troy v. Hall, 47 So. 1035, 157 Ala. 592; Cahill v. Baird, 70 P. 1061, 7 Cal. Unrep. 61; Holmes v. Evans, 29 N. E. 233, 129 N. Y. 140; Matheny v. Farley, 66 S. E. 1060, 66 W. Va. 680; Dempsey v. Dorrance, 132 S. W. 33, 151 Mo. App. 429; Crye v. O'Neal (Tex. Civ. App.) 135 S. W. 253.

Respondent in his brief on this appeal appears to have abandoned any contention for recovery upon the measure of damages

set out in the second amended complaint, but now seeks to sustain the theory upon which the learned trial judge submitted the matter to the jury and entered judgment by contending that Egan and appellants, upon entering into the contract here involved, became parties to a joint enterprise, and that Egan, having severed his connection with the enterprise, is nevertheless entitled to recover for his one-half of the services rendered up to the date he ceased to act. Conceding the applicability of a theory of joint enterprise or joint adventure, Egan, by virtue of the decision on the former appeal, must stand in the position of having willfully, wrongfully, and intentionally abandoned the joint enterprise, and we believe the rule to be that, where one party to a joint adventure willfully and wrongfully abandons the same, the other parties are not liable to him for any profits subsequently made by them. In the instant case, at the time Egan abandoned the enterprise, no profits had been earned or had accrued. Neither Egan nor appellants could at that time have collected any money whatever from C. No profit could accrue to the enterprise until and unless the C. case was carried beyond its then stage, and was carried to a final and successful conclusion. This was done subsequently by the appellants, but Egan, having voluntarily and wrongfully abandoned the speculative enterprise at a time when there was no profit in it, and might never be a profit, and certainly could never be a profit, unless the enterprise was carried to a successful conclusion, cannot thereafter come in and claim to share in a subsequent profit which would never have come into existence but for the services subsequently rendered by appellants. Egan's rights must be measured as of the time of his abandonment. He cannot abandon the admittedly speculative single, and indivisible enterprise at a stage when there is no present value in it, avoid all its further risks and burdens, stand by while other parties proceed therewith, and render it subsequently profitable, and then come in for a share of the subsequently accrued profit. See Denver v. Roane, 99 U. S. 355, 25 L. ed. 476.

The judgment and order appealed from are reversed.

MISER, Circuit Judge sitting in lieu of SHERWOOD, J.

DILLON, J. (dissenting). The bankrupt, Egan, was a practicing attorney in this state prior to April 4, 1916. The defendants herein were a firm of practicing attorneys who entered into a

contract, on and prior to the 20th day of September, 1915, with one Clinkscales to prosecute a claim against the Wisconsin Granite Company under a contingent fee contract whereby they were to receive a sum of money equal to 50 per cent. of any amount recovered from said action. On September 20, 1915, the defendants entered into a contract with Egan whereby it was agreed, said Clinkscales approving, that the attorney's fees due and payable under the original contract be divided equally between defendants and said Egan. It was agreed also that any money paid out by said Egan for expenses in the presentation of said case should be deducted as a part of expenses before the division between said Clinkscales and said attorneys was made. Said action was tried in the circuit court of Minnehaha county, this state, with Egan assisting, and a verdict and judgment for said Clinkscales was secured. The Wisconsin Granite Company then appealed to this court. In December, 1916, this court affirmed the decision of the lower court. A petition for rehearing was filed. This court finally determined the matter in February, 1917, and judment was paid to the defendants in this case. On March 1, 1918, said Egan brought action in circuit court against defendants for his share of the judgment, and secured same. Defendants then appealed to this court from such judgment and an order denying a new trial, and on December 31, 1918, this court reversed the judgment of the lower court. On October 20, 1919, an order to show cause was issued by said circuit court at the instance of said Egan, directing defendants to show cause why Egan should not be permitted to file an amended complaint. Egan then moved said circuit court for a judgment on default. Said motion was heard on December 29, 1919. No further proceedings having been taken by said Egan within the year from the time the decision was made, the defendants, on January 20, 1920, obtained from said circuit court an order to show cause why Egan's complaint should not be dismissed, and a judgment was entered dismissing same for lack of prosecution. On September 5, 1921, the court denied said motion. This action was tried a second time, and, on November 23, 1921, a jury returned a verdict for Egan for the amount of $612, and a special verdict that the defendants earned the sum of $1,500 subsequent to the disbarment of said Egan  Previous to the entering of the judgment, defendants moved said court for judg-

ment notwithstanding the verdict. This motion was denied, and said circuit court entered judgment in favor of Egan in the amount of $612, and, in addition, the costs of $80.10, to be taxed by the clerk of said court. Opposition to this taxation was filed and served by the defendants, and an appeal was taken to the circuit court, which court affirmed and sustained the clerk's taxation of costs herein. It is from the judgment of said circuit court that this appeal is taken. Egan contends that he earned and performed the labor in securing at least 75 per cent. of said net fee, and that the reasonable value of the services performed by him was $2,000.

It is the sole and only contention of appellants that, because said Egan was disbarred on April 4, 1916, he could not recover from his partners in this joint enterprise for any services which he had earned in the trial of this action before the date of disbarment.

I think that Egan's contention that he should receive $2,000 for his services cannot be upheld, but I think that he should be remunerated for services performed up to the date of his disbarment. Senneff v. Healy, 135 N. W. 27, 155 Iowa, 82, 39 L. R. A. (N. S.) 219. Having failed to carry out the full terms of his contract with the appellants, was Egan entitled to receive the full amount contracted for? The Senneff Case sustains this contention, and bases it upon the ground that they were engaged in a joint enterprise, and that the facts bring the case squarely within the reason of the rule announced in the Senneff Case, and held that the personal representatives were entitled to the whole amount that they would have been entitled to, if he had not been disbarred, and performed the full part of such contract. The court then say:

"Any disability which renders such contract from that time on impossible of performance annuls the contract."

It will be noticed that the court in treating this issue does not mean to hold that all contracts, including those that had been partially performed, and the benefits accepted, would come under the ban of disapproval. There is a clear distinction made between the case of partial performance and complete performance of a contract. I am not aware of any case holding to the extent claimed by these appellants. To do so would mean that appellants

could accept the services and enjoy benefits of the same without approving of such services to that extent, and I think no case can be found which goes to that extent. I think the only correct theory is the approval of the services to the extent received by the appellant while respondent was capable of performing such services. To do otherwise would produce a monstrous wrong, and deprive the respondent of compensation for services rendered. These appellants were as much bound as Egan to fulfill the contract which they were engaged in. They started on the enterprise presumptively in good faith, and the fact that they had completed the enterprise and work to that extent constituted part performance. Egan stands in the same position as to performance as the appellants, and the rights under the joint contract inured to the benefit of all. Appellants had no more right to repudiate their duties under this joint contract than had Egan.

A very interesting case is found in Bessie v. Northern Pacific Ry. Co., 105 N. W. 936, 14 N. D. 614, which sustains the position taken in the Senneff Case, and holds that the contract and lien were a partnership matter. The lien was not an individual or divisible one. It was an entirety, and belonged to the partnership. It remained such after the firm dissolved for purposes of bringing to a close business commenced by the partnership, unless shown to have been changed by a new and valid contract. "Martin C. Freerks, who was suspended, had an interest in the suit up to the dissolution. His suspension from practice did not prevent him from claiming what was due him upon an accounting with the firm for business done by it before the dissolution."

A very instructive case is found in Morton v. Forsee, 155 S. W. 765, 249 Mo. 409, Ann. Cas. 1914D, 197:

"Defendant contends that there can be no proportioning of the services at the contract rate; that a contract for personal services is an entirety, and no recovery can be had under the contract, if for any reason (death included) there has been a failure to fully perform. The first count of this petition was on the theory of full performance. The second count was likewise in one sense on the contract, but on the theory of proportioning the recovery on the basis of the work done as compared with the portion remaining to be done under the contract. If therefore the contention of defendant, as above indicated ,is correct, the ver-

dict in this case cannot stand, because it is the result of a wrong theory of the law of the case. We do not believe that on this question defendant's contention has the sanction of the modern cases. It may have been well founded at common law, but does not seem to have the approval of the courts at the present time. In other words, the strict common law rule has been departed from by the courts in later years. In 20 Am. & Eng. Ency. of Law, p. 44, it is said: 'According to an early English decision, the rule that full performance of an entire contract is a condition precedent to the servant's right to recover anything under the contract, unless he has just grounds for abandoning it, or is excused by the master from full performance, is applicable even in case of the servants' death during the term.'" But "'the decisions in the United States hold that the rule has no application in the case of a servant's death during the term; that death will excuse performance of an entire contract; and that a recovery will be permitted on a quantum meruit for services performed, the amount of recovery being subject to reduction by the amount of damages, if any, sustained by the employer in consequence of the servant's not being able to complete the stipulated term of service, and the recovery in no case exceeding the contract price or the rate of it for the part of the service performed.' The courts are not uniform in the wording of the rule. Some place is squarely upon the doctrine of proportioning the fee according to the service rendered, taking the contract price as the basis, whilst others denominate it a quantum meruit action, with the contract price fixing the value of all the services, which contract price should be lessened in the recovery by what damages the other party has sustained by the failure of full performance. The damages would be such as would be occasioned by getting another to complete the service and matters incident thereto.* * * Thus in New Jersey, in the case of Hargrave v. Conroy, 19 N. J. Eq. loc. cit. 285, it is said: 'His services were what the defendant bargained for. If accident, sickness, or death had prevented his performing his engagement at all, he would have been entitled to no pay. Where part has been performed, and the performance of the residue prevented without the fault of either party, he is entitled to pay in proportion, at the rate agreed upon for the whole.' So, too, it is said in Clark, Executor, v. Gilbert, 26 N. Y. loc cit. 282, 84

Am. Dec. 189: 'This court decided in Wolfe v. Howes, 20 N. Y. 197, 75 Am. Dec. 388, that, where a person is prevented by sickness or death from fully performing a contract for his personal services, which he has partially performed, compensation may be recovered for the services actually rendered by him under the contract. That decision shows that the plaintiff, as executor, may recover, in this case, compensation for the services his testator rendered for the defendant, although he was prevented by sickness and death from performing all he was to render according to the agreement between them; also, that the agreement is 'of consequence' in measuring or regulating the compensation to which the plaintiff is entitled. The latter conclusion is irresistible, for the reason that the agreement was not rescinded by the death of the testator, but remained in force, so far as to show his employment by the defendant and the value of the services rendered under it. Besides, it would be palpably unjust to disregard the stipulated value of the testator's services, for it is evident that he was employed in consequence of his integrity and capacity for the services required. * * * The Supreme Court of Vermont held, in Patrick v. Putnam, 27 Vt. 759, that a person contracting to labor for a definite term, who fails to fulfull his contract by reason of sickness, is liable to have the amount of his recovery reduced from the contract price, by the damages sustained by his employer, in consequence of his not being able to complete the full term of service. This rule is equitable; and it should be applied to such cases, although the servant is not to be regarded as violating his contract, in consequence of his inability fully to perform it, by reason of his sickness or death. His failure fully to perform his contract, for such a cause, is his misfortune and not his fault; and his employer should neither gain nor lose by it. This rule is just to the servant as well as the employer, and it should have been applied to this case. Much more might be said in favor of this rule, but it needs no vindication; it is so well grounded in good sense it sufficiently commends itself. It may be said to be a common-sense rule, and common sense is the basis of all just law.' "

Justice v. Lairy, 49 N. E. 461, 19 Ind. App. 272, 65 Am. St. Rep. 405:

"But appellee would be entitled to compensation for services rendered by him in the case up to the time of his incapacity to

practice. * * * He severed his connection with the case absolutely, and lost any right to any fees in the case under his original employment for that time on. * * * Yet there are sound reasons for holding that when an attorney at law, who is a member of a law firm, becomes a judge of a circuit or other court, at that instant the parttnership is dissolved, and that a contract of employment in pending business in such a case is of a divisible nature, under which a recovery may be had for services of which the client has already had the benefiit, but that such a person can have no interest in any fees for services rendered by the remaining member of the firm in concluding that particular business."

I have carefully examined the various assignments of error made by the defendants, and I think that they are without merit. I think that no error is shown in the instructions to the jury, and that the verdict in favor of Egan for his services performed before his disbarment is just, and should be allowed. I think that the value of the services performed by the appellants, as disclosed by the special verdict in favor of the appellants, should likewise be allowed. 

I think that the motion to dismiss the plaintiff's complaint was premature, and that the plaintiff took further proceedings in said action within the year after the case had been decided in the Supreme Court; that the plaintiff complied with section 3171, R. C. 1919; that the overruling of said motion to dismiss was a matter within the sound discretion of the trial court; and that sufficient cause for the delay was shown; and that there was no abuse of discretion in denying said motion. I think the court did not err in overruling Egan's motion for judgment upon the issues notwithstanding the verdict of the jury. I fail to see how the plaintiff could be deprived of his compensation earned by him in the common enterprise prior to his disbarment. The defendants were engaged in a point enterprise, and it became their duty, when Egan was disbarred, to liquidate the assets of the enterprise in the manner provided by the contract. I think that no additional penalty should now be allowed or fixed against Egan on account of his disbarment, and that the verdict of the jury in favor of Egan for $612 and costs of $80.10 should be upheld, as should also the finding of the jury to the effect that defendants earned $1,500 subsequent to the disbarment of Egan. These issues were

passed upon by the jury the second time, and should be held conclusive.

Note.—Reported in 207 N. W. 972. See, Headnote (1), American Key-Numbered Digest, Attorney and client, Key-No. 149, 6 C. J. Sec. 334; (2) Attorney and client, Key-No. 148(1), 6 C. J. Sec. 314; (3) Appeal and error, Key-No. 1097(1), 4 C J Sec. 3075; (4) Attorney and client, Key-No. 151, 6 C. J. Sec. 334 (Anno.).