#31183, #31194-aff in pt & rev in pt-SRJ
**2026 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

ELIZABETH L. GROVES, as Personal
Representative of the ESTATE OF
WILLIAM JASON GROVES and
GROVES LAW OFFICE,                    Plaintiffs and Appellants,

v.

GOODSELL & OVIATT, LLP,               Defendant and Appellee.

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

THE HONORABLE STACY L. WICKRE
Judge

JOHN K. NOONEY
CASSIDY M. STALLEY
JARED D. NOONEY of
Nooney & Solay, LLP
Rapid City, South Dakota          Attorneys for plaintiffs and
                                  appellants.


MICHAEL S. BEARDSLEY
STEVEN C. BEARDSLEY of
Beardsley, Jensen & Lee, Prof. L.L.C.
Rapid City, South Dakota          Attorneys for defendant and
                                  appellee.


ARGUED
MARCH 18, 2026
OPINION FILED **05/27/26**

JENSEN, Chief Justice

[¶1.]      William Jason Groves, a solo practitioner operating as Groves Law Office (Groves), and Verne Goodsell, on behalf of Goodsell & Oviatt, LLP (Goodsell), entered into contingency fee agreements with three clients to provide legal representation on unrelated claims involving the denial of workers' compensation benefits.  The agreements set out the fee arrangement with each client and provided for a split of attorney's fees between the two firms "on a pro rata Fifty/Fifty percent (50%-50%) basis[.]"  A dispute arose concerning the fees owed to Groves on the cases after he passed away on October 18, 2021.  Client #1's case had settled shortly before Groves's death, and the case for Client #2 resolved a few months later.

[¶2.]      Groves's wife, Elizabeth Groves, on behalf of the William Groves Estate (the Estate), filed this action to recover 50% of any fees paid by Clients #1 and #2 and for a declaratory judgment of the Estate's right to recover 50% of the fees paid by Client #3.  Goodsell later paid the Estate 50% of the attorney's fees paid by Client #1 but less than 50% of the attorney's fees paid by Client #2.  After ruling on multiple summary judgment motions, the circuit court determined that Groves's contracts with Clients #2 and #3 expired at the time of his death and that the Estate had been fully paid for attorney's fees earned on the cases for Clients #1 and #2.  The circuit court ordered Goodsell to pay the Estate prejudgment interest for the delayed payment of attorney's fees on Client #1's case.  The court also ordered the Estate to pay prejudgment interest to Goodsell on the disputed portion of the attorney's fees for Client #2 that Goodsell had deposited with the clerk of courts.  The Estate appeals.  Goodsell cross-appeals the circuit court's award of prejudgment

-1-

interest to the Estate for Client #1. We affirm in part, reverse in part, and remand for further proceedings.

## Factual and Procedural History

[¶3.] Groves and Goodsell entered into a fee agreement with Client #1 on July 27, 2016. Client #1's case settled on August 4, 2021. On September 1, 2021, Goodsell received the settlement proceeds and deposited them into its trust account. Due to the complexity of calculating the attorney's fees owed by Client #1, the fee agreement was amended on September 15, in which Client #1 agreed to pay attorney's fees of $1,062,500. The amended agreement continued to provide for a fee split of "50/50 between [Goodsell and Groves]." Goodsell paid itself 50% of the attorney's fees earned ($531,250) in two installments on September 15 and October 13, 2021. Goodsell did not pay Groves attorney's fees from Client #1's case at this time.

[¶4.] The Estate filed suit to determine the fees owed under all three agreements in May 2022. Goodsell subsequently delivered a check to the Estate in the amount of $425,000.[1] A letter accompanying the check provided that the check was "for attorney's fees in the [Client #1] matter." Additionally, it provided, "The payment of $425,000.00 shall not constitute a waiver of any right, claim, or defense [either party] may have in [the litigation]." The Estate responded to Goodsell by letter, acknowledging the check and stating:

---

1. This amount was paid based upon discussions Goodsell had with an out-of-state law firm purportedly representing the Estate. Shortly thereafter, the Estate clarified that it would not settle for less than 50% of the fees collected from Client #1.

> That check is not an unconditional payment and because there are conditions attached to it, we will remit the check to you and pre-judgment interest will continue to accrue on that sum. If you would like to provide an unconditional tender of those monies, please do so and my client will accept an unconditional tender.

The Estate subsequently returned the check. Goodsell later paid the Estate 50% of the attorney's fees earned from Client #1's case ($531,250) on November 4, 2022, before the circuit court had ruled on any of the summary judgment motions.

[¶5.]      Groves and Goodsell entered into a contingency fee agreement with Client #2 on May 14, 2014. Following workers' compensation proceedings, Client #2 filed a bad faith action that was tried to a jury in state court in November 2017. The jury returned a verdict in favor of Client #2 for approximately $45.5 million. A large portion of the award was punitive damages. The circuit court reduced a portion of the punitive damages verdict by remittitur and entered a judgment for approximately $10.5 million. Both parties appealed from the judgment. Groves and Goodsell retained Robert Peck, an appellate lawyer, to argue the issue of punitive damages on appeal for a flat fee of $100,000. This Court reversed the bad faith judgment and remanded for a new trial.

[¶6.]      Client #2's bad faith claim was retried to a jury less than one month after Groves's death. The second trial resulted in a jury verdict of approximately $42 million. After trial, the circuit court reduced the verdict by remittitur to approximately $21.1 million. Both parties appealed the judgment but reached a settlement on May 10, 2022.

[¶7.]      Per the terms of the contingency fee agreement, Client #2 paid total attorney's fees of $7,680,000 from the settlement proceeds. From these fees,

-3-

Goodsell paid Peck $100,000. Goodsell paid itself 50% of the remaining fees ($3,790,000) in three installments on June 2, June 22, and June 30, 2022. On November 7, 2022, Goodsell delivered a check to the Estate in the amount of $1,500,000 for "fees payable in the [Client #2] matter" as an "unconditional tender[.]" The Estate accepted the check but continued to assert that it was owed 50% of the attorney's fees paid by Client #2.

[¶8.]  The third fee agreement at issue in this case is the contingency fee agreement that Groves and Goodsell entered into with Client #3 on April 6, 2017. Client #3's case is still pending. No fees have been paid by Client #3.

[¶9.]  After the Estate filed suit, Goodsell counterclaimed, alleging Groves breached the contracts with all three clients and seeking interpleader to deposit the disputed portion of the fees claimed by Groves for Client #2 with the clerk of courts. Goodsell subsequently filed a motion to deposit the disputed portion of attorney's fees in the amount of $2,340,000 received from Client #2 with the clerk of courts. The circuit court granted the motion.

[¶10.]  The Estate filed an amended complaint, alleging breach of contract as to Client #1 and Client #2 and seeking a declaratory judgment as to Client #3. Goodsell filed an amended answer and counterclaim, alleging Groves breached the contract with Client #2 and seeking a declaratory judgment as to the responsibility for prejudgment interest for attorney's fees from Client #1's case; a determination of the amount of attorney's fees owed to the Estate from Client #2's case; and a determination of the amount of attorney's fees to be paid to the Estate from Client #3's case.

[¶11.]     The Estate moved for summary judgment, seeking a determination that the Estate was entitled to 50% of the fees earned from the cases for Client #1 and Client #2.  The Estate later amended the motion, seeking the same determination for Client #3.  The Estate filed a second summary judgment motion for prejudgment interest on the portion of the attorney's fees owed to the Estate for Client #1 from the time Goodsell paid itself attorney's fees until payment was made to the Estate in November 2022.

[¶12.]     The circuit court granted the Estate's first motion "on the narrow issue that the language 'pro-rata Fifty/Fifty percent (50%-50%)' [in the fee agreements] is unambiguous."  The court clarified that it did "not agree that the [c]ourt's ruling finding the language is unambiguous **is determinative of whether** [the Estate] is contractually entitled to 'an equal portion of 50% of attorney fees for each of the Agreements between Goodsell and [Groves]' because other issues remain in the case."  The circuit court later denied the Estate's second motion for prejudgment interest on the fees belatedly paid to the Estate for Client #1, finding a genuine issue of material fact "as to whether Goodsell was 'prevented by law, or by act of the creditor, from paying the debt.'"

[¶13.]     The Estate filed a third motion for summary judgment, seeking a determination that South Dakota Rule of Professional Conduct 1.5 (Rule 1.5) does not create a cause of action or defense.  Goodsell moved for summary judgment on the same issue and also sought a determination that attorney fee agreements are personal service contracts that terminate upon the death of the attorney.  The circuit court granted the Estate's third motion for summary judgment and denied a

portion of Goodsell's motion for summary judgment, determining that Rule 1.5 does not create a cause of action or defense in the case.

[¶14.] However, the circuit court granted the remainder of Goodsell's motion, ruling that the contingent fee agreements were personal services contracts that terminated upon Groves's death. Regarding Client #2, the circuit court held:

> [T]here is a genuine issue of material fact as to whether Groves became entitled to the fees upon the first jury verdict. A fact finder will have to determine the nature of the contract and the scope of the representation in order to determine whether Groves'[s] death terminated that contract. Regarding Client No. 2, Goodsell is not entitled to summary judgment.

As for Client #3, the circuit court held:

> Clearly, Groves'[s] death terminated the agreement, and it is no longer enforceable. Groves'[s] employment with Client No. 3 was a personal service contract. Groves died in October 2021. To this day, Client No. 3's case remains unresolved. Therefore, there is no genuine issue of material fact relating to the fees for Client No. 3. Goodsell's [m]otion for [s]ummary [j]udgment is granted as it pertains to Client No. 3.

[¶15.] Thereafter, the Estate filed a fourth motion for summary judgment, seeking a determination that the fee agreement for Client #2 was unambiguous and that there were no genuine issues of material fact concerning Groves's entitlement to 50% of the fees for Client #2. Goodsell filed a cross-motion for summary judgment, seeking a determination as a matter of law that Groves completed no more than 20% of the work for Client #2's case and that the $1,500,000 fee payment made by Goodsell to the Estate for Client #2 exceeded the fees earned by Groves. The Estate subsequently filed a motion to establish dates for prejudgment interest on the attorney's fees earned from Client #1 and Client #2.

[¶16.] The circuit court denied the Estate's fourth motion for summary judgment and granted Goodsell's cross-motion for summary judgment. The court determined that although the contingent fee agreement for Client #2 terminated upon Groves's death, the Estate could recover for the services rendered while he was alive. The circuit court held that "[t]he undisputed evidence before the [c]ourt is that Groves contributed 10-20% of the work for Client No. 2" and that the $1,500,000 payment made to the Estate was an amount greater than 20% of the attorney's fees recovered in the settlement. As such, the court concluded that "there are no genuine issues of material fact as to whether [the Estate is] entitled to further payment regarding Client No. 2[.]" The court also determined that the Estate was entitled to prejudgment interest from the date Goodsell paid itself its 50% of the attorney's fees for Client #1—September 15, 2021—to the date Goodsell paid the Estate—November 7, 2022. Additionally, the court concluded that the motion for prejudgment interest as to Client #2 was moot based upon the court's determination that the Estate had been fully paid.

[¶17.] Goodsell filed a motion for the return of the funds it deposited with the clerk of courts for Client #2 and sought prejudgment interest pursuant to SDCL 21-1-13.1 on the funds. The circuit court held a hearing on the motion and entered an order returning $2,340,000 to Goodsell and awarding prejudgment interest to Goodsell in the amount of $592,372.64 on the funds that had been deposited with the clerk of courts.

[¶18.] The Estate raises several issues which we restate as follows:

> 1. Whether the circuit court erred by determining that the contracts with Client #2 and Client #3 terminated upon

Groves's death and that there were no additional attorney's fees owed by Goodsell to the Estate for Client #2.

2.  Whether the circuit court erred by awarding Goodsell prejudgment interest on the disputed attorney's fees for Client #2 that were deposited with the clerk of courts.

[¶19.] Goodsell cross-appeals, raising one issue:

1.  Whether the circuit court erred in awarding the Estate prejudgment interest on the attorney's fees earned from Client #1's case.

## Standard of Review

[¶20.] "We review the circuit court's decision on a summary judgment motion 'under the de novo standard of review.'" *Rowe v. Rowe*, 2025 S.D. 40, ¶ 10, 24 N.W.3d 746, 751 (citation omitted).

> Summary judgment is proper where, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We will affirm only when no genuine issues of material fact exist and the law was applied correctly. We make all reasonable inferences drawn from the facts in the light most favorable to the non-moving party. In addition, the moving party has the burden of clearly demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Estate of Olsen v. Agtegra Coop.*, 2024 S.D. 39, ¶ 12, 9 N.W.3d 763, 768 (citation omitted). "We review questions of law de novo with no discretion given to the circuit court." *Pauley v. Simonson*, 2006 S.D. 73, ¶ 7, 720 N.W.2d 665, 667 (citation omitted). "Prejudgment [interest] calculations are done as a matter of law. As such, the standard of review is de novo." *JAS Enters., Inc. v. BBS Enters., Inc.*, 2013 S.D. 54, ¶ 44, 835 N.W.2d 117, 129 (citation omitted).

## Analysis

### 1.  Disputed attorney's fees for Clients #2 and #3.

[¶21.]  The Estate argues the circuit court erred by denying its fourth motion for summary judgment and by granting Goodsell's motion and cross-motion for summary judgment.  Specifically, the Estate challenges the circuit court's determination that the contingency fee agreements for Clients #2 and #3 were personal services contracts that terminated as to Groves upon his death on October 18, 2021, that Groves was not entitled to any additional fees for Client #2 beyond the $1,500,000 previously paid by Goodsell, and that Groves was not entitled to any fees for Client #3.[2]

[¶22.]  While this Court has not considered whether contingent fee agreements terminate upon the death of an attorney, other courts have generally held that contingent fee agreements are personal services contracts that terminate upon the death of either party.  *See Wells v. Powell Powell & Powell PA*, 711 Fed. Appx. 517, 521 (11th Cir. 2017) (per curiam) ("It is a longstanding presumption of Florida contract law that a contract between an attorney and client for legal services 'dissolve[s]' upon the death of either party." (citation omitted)); *Estate of Burford v. Freeman*, 281 So. 3d 942, 946 (Miss. Ct. App. 2019) ("Where a contract is made with an attorney, and it is specially contracted or understood that he alone is to do the work or to render the services, or that his skill exclusively is depended

---

2.  The Estate also raises issues relating to the enforceability of the fee agreements with Clients #2 and #3 and the unambiguous nature of those agreements providing for a 50/50 split of fees.  However, we need not address these contractual issues based upon our determination that the contracts terminated as to Groves upon his death.

upon, then the death of the attorney terminates the contract[.]" (citation omitted));

*In re Estate of Horwitz*, 863 N.E.2d 842, 846 (Ill. App. Ct. 2007) ("Generally, when a

client dies, the attorney-client relationship terminates . . . . When the attorney-

client relationship terminates, the contingent-fee contract ceases to exist, and the

contingency terms are no longer operative." (citations omitted)).

[¶23.]        These decisions are consistent with our recognition that "[a] contingent

fee contract . . . is a contract for personal services[.]" *Davenport v. Waggoner*, 207

N.W. 972, 974 (S.D. 1926). We have also held that the "[t]ermination [of a legal

services contract] can be affected in various ways, such as the death of a party,

discharge of the attorney, withdrawal of the attorney, and of course, contractual

stipulation or the completion of the services." *Burke v. Foss*, 334 N.W.2d 861, 864

(S.D. 1983). Further, we have held that personal services contracts in other

contexts terminate upon the death of one of the parties. *See Minnehaha Cnty. ex

rel. Willadsen v. Willadsen*, 11 N.W.2d 55, 59 (S.D. 1943) ("[I]f the thing contracted

for is the personal service or acts of the promisor, it is self-evident that the parties

intended that the obligation should not survive his death."); *see also* Restatement

(Second) of Conts. § 262 ("If the existence of a particular person is necessary for the

performance of a duty, his death or such incapacity as makes performance

impracticable is an event the non-occurrence of which was a basic assumption on

which the contract was made.").

[¶24.]        At the time Groves passed away, the litigation involving Client #1 had

settled, and the contingent attorney's fees had been paid. However, Goodsell

continued to represent Clients #2 and #3 after Groves's death. Goodsell represented

Client #2 through the successful resolution of the case, and Client #2 paid the attorney's fees due under the contingency fee agreement. Groves was engaged in providing legal services to all three clients prior to his death, but once Groves was no longer able to provide these personal services to Clients #2 and #3, these contingency fee agreements terminated as to Groves.

***Client #2***

[¶25.] The Estate argues that the circuit court's summary judgment ruling as to the attorney's fees owed to Groves for Client #2 was erroneous because the court moved from a contract-based analysis to a "proportional work and ethical rules" theory that the circuit court had previously rejected.[3] Alternatively, the Estate argues that even if the agreements for services with Clients #2 and #3 terminated upon Groves's death, the circuit court erred in finding as a matter of law that the

---

3. The Estate relies on *Senneff v. Healy*, 135 N.W. 27 (Iowa 1912), a decision considered in *Egan v. Waggoner*, 170 N.W. 142 (S.D. 1918). Attorney Senneff agreed to represent a client for a one-third contingent fee and then entered into a separate agreement with attorneys Kelleher and Healy to assist in the litigation for an equal share of the contingent fee earned by Senneff. 135 N.W. at 27–28. Healy died during the pendency of the case, but his estate sought to recover one-third of the attorney's fees after a judgment was obtained for the client. *Id.* at 28. The court held that Healy's Estate was entitled to recover one-third of the fee because the attorneys had engaged in a joint venture. *Id.* at 31. *Senneff* is inconsistent with Rule 1.5, which requires attorneys from separate firms splitting fees to be actively engaged in providing services or remain responsible for the representation. SDCL 16-18 App., Rules of Prof. Conduct, Rule 1.5. Moreover, although Groves and Goodsell were engaged in a common purpose, the contingent fee agreement with Client #2 provided for separate pecuniary interests rather than a joint pecuniary interest. *See A.P. & Sons Const. v. Johnson*, 2003 S.D. 13, ¶ 19, 657 N.W.2d 292, 296–97 (providing that profits which are severally earned— the parties merely having dealt with the same subject matter, but not for or on behalf of each other—do not meet the requirements for a joint venture).

Estate was not entitled to recover any additional fees from Client #2's case beyond the $1,500,000 tendered by Goodsell.

[¶26.] In its summary judgment ruling, the circuit court stated, "While the agreement terminated upon Groves'[s] death, [the Estate] may still recover some amount for the services rendered while he was alive." The court noted that a claim for quantum meruit recovery had not been asserted by the Estate, but nonetheless considered whether the Estate was entitled to additional fees above the $1,500,000 Goodsell previously paid based upon the value of the services Goodsell claimed were rendered by Groves. The court determined that the undisputed evidence showed that Groves had not provided more than 20% of the services rendered to Client #2 and that Goodsell's payment of $1,500,000 to the Estate exceeded 20% of the fees earned by Groves prior to his death.

[¶27.] The circuit court correctly determined that Groves's contracts with Clients #2 and #3 expired at his death, but the court erred in resolving the question of the reasonable value of services provided by Groves before his death as a matter of law.

> If an attorney dies before they have prosecuted to a judgment or settlement a litigation which they have undertaken to conduct for a certain compensation, the extent of the recovery permitted is the reasonable value of the services rendered under the contract[.]
>
> [. . .]
>
> A contingent fee contract is enforceable by an attorney's estate where the contract had been fully or substantially performed by the attorney prior to death. Where the client ultimately recovers, the estate of the attorney may recover the fair value of the services which the attorney had rendered pursuant to the contingent fee contract or on the basis of the proportion of the

services performed by the attorney prior to death to the remainder of the services.

7A C.J.S. *Att'y & Client* § 442 (2026).

[¶28.]     The majority of courts follow this approach. *See Roe v. Sears, Roebuck & Co.*, 132 F.2d 829, 832 (7th Cir. 1943) ("The theory seems to be that death terminates the contract of employment but the attorney having rendered services of value to his client, his estate may recover the fair value of the services rendered pursuant to the contract."); *In re Lake's Estate*, 123 N.Y.S.2d 307, 309 (Sur. 1953) ("It is also well settled that if a lawyer dies before he has prosecuted to a judgment or settlement a litigation which he has undertaken to conduct for a certain compensation his contract is at an end . . . . Under these circumstances, the extent of the recovery permitted to his representative is the full reasonable value of the services rendered under the contract[.]" (citations omitted)); *Morton v. Forsee*, 155 S.W. 765, 769 (Mo. 1913) (holding that "the sounder rule is that, in a case where there has been no other consequential damages to the surviving party than the employment of other counsel to continue the work, the executor of the deceased lawyer should be entitled to recover on the basis of the contract price for the services actually performed").

[¶29.]     Similarly, we have recognized outside the context of attorney fee agreements that:

> It seems to be an elementary rule of law that where a person performs services for another, in good faith, under a void contract . . . and where the other party has knowingly reaped the benefits of such services, that the person so performing the same may recover from the person receiving the benefits the reasonable value of such services upon the quantum meruit, irrespective of the contract, that under such circumstances the

> law implies a promise on the part of the person so receiving such benefit to pay what the same were reasonably worth.

*Werre v. Nw. Thresher Co.*, 131 N.W. 721, 722 (S.D. 1911).

[¶30.] Although Groves had provided legal services to Client #2 for several years before his death, the contingency fee agreement had not been substantially performed, as no recovery had been made for the client at the time. As such, Groves is not entitled to recover under the contingency fee agreement but is entitled to recover in quantum meruit for the reasonable value of the services he provided to Client #2 prior to his death.

[¶31.] Goodsell argues that this Court's decision in *Davenport v. Waggoner*, 207 N.W. 972 (S.D. 1926), controls. But *Davenport*, and its preceding case, *Egan v. Waggoner*, 170 N.W. 142 (S.D. 1918), dealt with an attorney who was disbarred prior to the resolution of a case involving joint representation.

[¶32.] In *Egan*, a client retained two attorneys to prosecute a personal injury claim for a contingent fee of 50% of the amount collected. 170 N.W. at 142. The two attorneys then entered into a written agreement with a third attorney, Egan, under which he agreed to assist in the case for 50% of the fees earned. *Id.* A judgment for the client was obtained. *Id.* During the appeal, and before the judgment for the client was affirmed, Egan was disbarred. *Id.* Egan filed suit to recover 50% of the amount collected by the first two attorneys. *Id.* This Court held that Egan was not entitled to any fees because the contract termination was brought on by his own wrongdoing. *Id.* at 143.

[¶33.] After the *Egan* decision, Davenport, Egan's trustee in bankruptcy, became the plaintiff and amended the complaint, seeking fees under a quantum

meruit theory of recovery. *Davenport*, 207 N.W. at 973. This Court held that

Davenport could not recover in quantum meruit:

> [H]aving abandoned said contract before the [client's] case was terminated, without just cause, as settled by the former appeal, we believe the sounder rule to be that by such abandonment he forfeited all right to payment for any services previously rendered.

*Id.* at 974.

[¶34.] Unlike the circumstances in *Egan* and *Davenport,* Groves's death was not a voluntary or wrongful abandonment of the case for Client #2. To deprive the Estate of all compensation for the services rendered prior to Groves's death would be inequitable. Where a contingency fee agreement terminates because of death, illness, or other just cause, the better rule is that the attorney may recover under a quantum meruit theory for the reasonable value of services rendered prior to his or her death.

[¶35.] The circuit court found that "[t]he undisputed evidence before the [c]ourt is that Groves contributed 10-20% of the work for Client No. 2[,]" based upon the deposition testimony of David Barari, an attorney employed at Goodsell at the time, and two paralegals employed by Goodsell, Donna Craven and Jacquelyn Langley. The court concluded that the Estate was not entitled to any additional attorney's fees because Goodsell made a $1,500,000 payment to the Estate following the settlement of Client #2's case—an amount greater than 20% of the attorney's fees recovered.

[¶36.] However, viewing all reasonable inferences in favor of the Estate, the record does not support the circuit court's determination that there are no genuine

issues of material fact as to the reasonable value of the legal services Groves provided in Client #2's case. Rule 1.5, which addresses the manner in which attorney's fees may be divided, allows a division if it "is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation[.]" SDCL 16-18 App., Rules of Prof. Conduct, Rule 1.5(e)(1). Here, while Barari "estimated" that Groves completed "somewhere in the neighborhood" of 10-20% of the work for Client #2's case, neither Groves nor the Goodsell attorneys tracked their time on Client #2's case. Additionally, Barari's testimony demonstrates that Groves "assumed joint responsibility for the representation" by reviewing pleadings, participating in hearings, attending depositions, reviewing correspondence related to Client #2's case, and assisting with a mediation for Client #2 after the remand on appeal.

[¶37.]     Barari also testified that Groves was actively involved in devising the legal strategy for both trials to support the claim for bad faith arising from the workers' compensation proceedings, stating:

> Q:     [I]n some ways the second trial can even be more difficult because the other side knows exactly where you are going?
>
> [. . .]
>
> A:     Well, [the second trial], a lot of it was from video depositions and reading depositions, and the testimony was essentially going to be the same. There was really only one new witness[.]
>
> [. . .]
> A:     [The new witness] so far as I know didn't have an interest in how the second trial turned out. We had taken our deposition already and figured out our strategy.

> Q: Okay. And the strategy was devised by you and [Goodsell] and [Oviatt]?
>
> A: And [Groves].
>
> Q: For the second trial?
>
> A: Yes.

[¶38.] The circuit court erred in granting Goodsell's cross-motion for summary judgment, as questions of fact exist on this record concerning the reasonable value of the services provided by Groves to Client #2. *See In re Nelson Living Tr.*, 2013 S.D. 58, ¶ 33, 835 N.W.2d 874, 884 (providing that the determination of the reasonable value of services provided generally involves questions of fact).

### *Client #3*

[¶39.] The Estate also argues the circuit court erred in concluding that it was not entitled to recover any fees for Client #3's case. As explained above, the circuit court correctly determined that the contingency fee agreement for Client #3 terminated upon Groves's death. However, the question of whether the Estate may be entitled to recover under a quantum meruit theory is not ripe because Client #3's case has not been resolved, no fees have been paid by Client #3, and it is unknown whether any fees will be owed in the future. *See Boever v. South Dakota Bd. of Acct.*, 526 N.W.2d 747, 750 (S.D. 1995) ("Ripeness involves the timing of judicial review and the principle that '[j]udicial machinery should be conserved for problems which are real and present or imminent, not squandered on problems which are abstract or hypothetical or remote.'" (citation omitted)).

### 2.  *Prejudgment interest on the disputed fees for Client #2.*

[¶40.]    The Estate argues the circuit court erred in awarding Goodsell prejudgment interest on the disputed fees Goodsell had voluntarily deposited with the clerk of courts.  The Estate asserts that the circuit court's grant of Goodsell's cross-motion for summary judgment on the attorney's fees owed for Client #2 did not make Goodsell a party "entitled to recover damages" under SDCL 21-1-13.1.  Goodsell responds that the circuit court's ruling determining Groves was not entitled to any of the disputed fees deposited by Goodsell as part of the interpleader action created the right to recover prejudgment interest under SDCL 21-1-13.1.

[¶41.]    Given our determination that fact questions remain concerning the Estate's entitlement to any of the disputed fees deposited by Goodsell, there may no longer be live controversy concerning either party's responsibility for prejudgment interest.  However, because the issue may occur again on remand, we address the issue in this appeal.  "Prejudgment interest has as its purpose to compensate an injured party for the wrongful detention of money owed." *Anderson v. Aesoph*, 2005 S.D. 56, ¶ 27, 697 N.W.2d 25, 33 (citation omitted).  SDCL 21-1-13.1 provides, "Any person who is entitled to recover damages . . . is entitled to recover interest thereon from the day that the loss or damage occurred[.]"  "Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages.  Detriment is a loss or harm suffered in person or property." SDCL 21-1-1.

[¶42.]    Goodsell's initial action of depositing the disputed fees pursuant to SDCL 15-6-67(a) was a voluntary act.  Goodsell initiated the interpleader action

and moved to deposit the funds with the clerk of courts. As such, Goodsell did not suffer a "detriment from the unlawful act or omission of" the Estate or the "wrongful detention of money owed." This is particularly true where the circuit court's order granting Goodsell's cross-motion for summary judgment did not provide that Goodsell was entitled to recover any of the sums on deposit as damages. The circuit court erred in awarding Goodsell prejudgment interest on those deposited funds.

### 3. Prejudgment interest for attorney's fees belatedly paid on Client #1's case.

[¶43.] In its cross-appeal, Goodsell argues the circuit court erred in awarding the Estate prejudgment interest on the attorney's fees earned from Client #1's case. "[U]nder SDCL 21-1-13.1, a person entitled to damages 'is entitled to recover interest thereon from the day that the loss or damage occurred, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt.'" *Wright v. Temple*, 2023 S.D. 34, ¶ 30, 993 N.W.2d 553, 562.

[¶44.] Goodsell claims it was "prevented by law . . . from paying the debt" under SDCL 21-1-13.1 because the Estate—the proper beneficiary of the funds—was not opened until April 25, 2022. Additionally, Goodsell argues it was "prevented by . . . act of the creditor[] from paying the debt" under SDCL 21-1-13.1 because Groves was terminally ill and not in communication with Goodsell at the time the settlement funds were received.

[¶45.] Goodsell received settlement funds from Client #1 on September 1, 2021, and transferred the 50% of attorney's fees it earned from its trust account to

its operating account on September 15 and October 13. Groves's death did not occur until October 18.

[¶46.]    Although Groves was ill at the time Goodsell paid fees to its operating account, the record does not support Goodsell's contention that it was prevented by any act of Groves from paying the fees owed to Groves while he was ill. Rather, the record shows that Groves and Goodsell communicated via email and phone calls between the time Goodsell received the fees from Client #1's case and the time of Groves's death, and there is no evidence that Goodsell made any attempt to pay Groves 50% of the fees owed at this time. In fact, the evidence in the record shows that Goodsell initially took the position that Groves was not entitled to 50% of the fees for Client #1. Further, besides the three fee agreements at issue in this case, Groves and Goodsell entered into identical contingency fee agreements with ten other clients—all of which previously settled and resulted in fee splits between the law firms without issue. The circumstances here do not fit the exceptions laid out in SDCL 21-1-13.1.

[¶47.]    Goodsell further claims that the interest on $425,000 of Groves's 50% of the attorney's fees for Client #1 was tolled on August 1, 2022, when Goodsell sent the Estate an unconditional tender in that amount, which the Estate rejected. SDCL 20-5-18 provides, "An offer of payment or other performance, duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation, and has the same effect upon all its incidents as a performance thereof." "For tender of payment under SDCL 20-5-18 to toll

interest, 'the tender must be unconditional.'" *Adrian v. McKinnie*, 2004 S.D. 84,

¶ 14, 684 N.W.2d 91, 98 (citation omitted).

[¶48.]     Relying on *Stromberger Farms, Inc. v. Johnson*, the Estate argues the

tender was conditional because it was less than the full amount due under the fee

agreement and failed to discharge liability by expressly reserving the parties' claims

and defenses.  2020 S.D. 22, ¶ 36, 942 N.W.2d 249, 260 ("[F]or tender to be

unconditional, it must be the actual production of a sum not less than the amount

due on a specific debt or obligation." (citation omitted)).  However, this Court has

held that, when the amount owed is disputed, an offer to pay less than the full

amount is unconditional so long as the creditor maintains the right to pursue a

claim for the disputed funds.  *See id.* ¶ 41, 942 N.W.2d at 261; *see also Am. Fed.*

*Savs. & Loan Ass'n of Madison v. Mid-America Serv. Corp.*, 329 N.W.2d 124, 127

(S.D. 1983) ("[W]hen one party is honestly claiming a greater amount to be due than

the other party concedes, . . . he has the right to test the validity of his further

claim, and the condition attached to the tender must be such as to leave him free to

contest such right." (emphasis omitted)).

[¶49.]     On August 1, 2022, after negotiations had failed, Goodsell sent the

Estate a check in the amount of $425,000.  In a letter accompanying the check,

Goodsell stated that the check was "for attorney's fees in the [Client #1] matter" and

that "[t]he payment of $425,000.00 shall not constitute a waiver of any right, claim,

or defense [either party] may have in [the litigation]."  Aside from the disputed

portion of fees owed to Groves, the check was delivered to the Estate without

reservation. This was an unconditional tender that tolled interest from the date Goodsell tendered the check for $425,000 to the Estate.

## Conclusion

[¶50.] We affirm the circuit court's order granting Goodsell's motion for summary judgment, holding that the contingency fee agreements for Clients #2 and #3 terminated upon Groves's death. We reverse the circuit court's order granting Goodsell's cross-motion for summary judgment, determining that the Estate has been fully paid for services provided by Groves on Client #2's case, and remand for further proceedings consistent with this opinion.

[¶51.] We reverse the circuit court's order awarding Goodsell prejudgment interest on the funds it had voluntarily deposited with the clerk of courts. We affirm in part, vacate in part, and remand the circuit court's order granting the Estate prejudgment interest on the attorney's fees earned for Client #1 and direct the circuit court to recalculate the amount of prejudgment interest owed on the principal amount of $531,250, accruing from September 15, 2021—the date Goodsell paid itself—to August 1, 2022—the date of the unconditional tender of $425,000, and calculating prejudgment interest on the difference between the unconditional tender of $425,000 and the full payment of $531,250, accruing from August 2, 2022—the day after the unconditional tender—until November 4, 2022—the date the full payment was made.

[¶52.] SALTER, DEVANEY, and MYREN, Justices, and POWER, Circuit Court Judge, concur.

#31183, #31194

[¶53.] POWER, Circuit Court Judge, sitting for GUSINSKY, Justice, who deemed himself disqualified and did not participate.